### HIGLEY *vs.* SMITH and BOYDEN.

If an Administrator, under an order of the Court of Probate, sell real estate of his intestate, and, to secure the payment of the purchase money, take to himself as Administrator, a mortgage of the same or other estate, and such mortgage be foreclosed, the title of the estate so mortgaged, vests in the Administrator in his private capacity ; and if he again convey the same estate as Administrator, his title will pass by the deed, and covenants contained in the deed will create a personal obligation on him.

A purchaser of real estate, may protect his purchase by such covenants as he may deem necessary, but if he accept a quit-claim deed, a mere failure of title furnishes no ground for recovering back the purchase money.

THIS was an action for money had and received, and for mon- *Addison,* ies paid, &c. *January, 1824.*

52

*Addison,*
January,
1824.

Higley
*vs.*
Smith and
Boyden.

On trial upon the general issue, at January term, 1822, the plain-tiff, in support of the issue on his part, offered evidence of facts to make out the following case :—That on the 7th day of September, 1814, the defendants as administrators of Silas Smith, late of Shoreham, deceased, conveyed to the plaintiff by their deed of that date, a certain farm of land, being part of the estate of said Silas Smith deceased, pursuant to an order of the Court of Probate, directing a sale of the real estate of the said Silas deceased, for the payment of the debts against said estate.   On the receipt of which deed, the plaintiff paid to the defendants in part of the purchase money a sum sufficient to pay all the debts against the estate of the said Silas deceased, and executed a mortgage deed of the premises to the defendants to secure the payment of the remaining part of the purchase money.   On which said mortgage deed the defendants afterwards brought an action of ejectment for said premises, by which they obtained a foreclosure of the mortgage and possession of the premises· And afterwards, to wit, on the 6th day of May, 1818, the plaintiff again purchased the same premises of the defendants, who without any order of sale from the Court of Probate, executed and delivered a quit-claim deed of the premises, of which the following is a copy :

" Know all men by these presents that we Jonathan Boyden, Jr. and Stephen Smith, Jr. both of Shoreham aforesaid, administrators of Silas Smith, late of said Shoreham deceased, in consideration of the sum of nineteen hundred and fifty dollars current money of the United States, received in full to our satisfaction of Jesse Higley of Shoreham aforesaid, the receipt whereof we do hereby acknowledge, have remised, released and have forever quit-claimed, and by these presents do remise, release and forever quit-claim, in our said capacity unto the said Jesse Higley, his heirs and assigns forever, all our right, title and interest in and unto a certain tract of land lying and being in Shoreham aforesaid, and described as follows, To have and to hold the above remised and released premises, with all the privileges and appurtenance thereof, to him the said Jesse Higley, his heirs and assigns forever. · And we do hereby in the capacity of administrators as aforesaid, covenant with the said Jesse Higley, his heirs and assigns, that we will warrant and defend the premises above mentioned against all lawful claims of any person or persons whatever, claiming from or·under us in our said ca-

pacity of administrators as aforesaid." On the delivery of which
deed, the plaintiff paid to the defendants five hundred dollars in
part of said purchase money, and executed and delivered to the
defendants a mortgage deed of the same premises, to secure the
payment of the remaining part of the purchase money. Afterwards
the defendants, as administrators as aforesaid, commenced an action
of ejectment on the said last mentioned mortgage deed for the same
premises, and recovered judgment thereon against the present plain-
tiff; on which, upon application of the said Higley, the usual time
of redemption was set and expired, and possession taken by said
administrators, under said judgment. And afterwards the same land
was set off by order of the Court of Probate to the heirs of said Silas
Smith deceased.

*Addison,*
*January,*
*1821.*

Higley
*vs*
Smith and
Boyden.

The Court excluded the evidence offered on the part of the plain-
tiff, and a verdict passed for the defendants. The plaintiff filed a
motion for a new trial founded on the rejection of said evidence,
on which the cause came on to be heard at the present term.

*Phelps* and *Holley* for the plaintiff. The plaintiff, in this case,
claims a right to recover back the money paid for the land upon the
last purchase in the year 1818, upon the ground of a total failure of
the consideration. The deed from the defendants to the plaintiff,
was wholly inoperative as to conveying a title. It purports to con-
vey only their title as administrators of Smith; but they had no
authority from the Court of Probate to make the conveyance. The
order of sale for the payment of debts, had performed its office upon
the first sale, as it produced a sufficient sum to pay all the debts of
the intestate. The order then was *functus officio* and warranted
no further sale of the estate. Such must be the case, as it is only
for the payment of debts that the Court of Probate has power to
order a sale, and when this purpose is answered, the power of the
Court ceases. But if we are incorrect in this, yet nothing passed
by the deed; for by the first sale the land was severed from the as-
sets in the hands of the administrators, and when it reverted by a
foreclosure of the mortgage, it vested in the defendants in their pri-
vate or individual capacity. It is doubtful whether they held it
even in trust for the estate; if they did, yet the legal title was in
them to all intents and purposes.

It is, indeed, immaterial, whether the legal title be considered as

*Addison,*
January,
1824

Higley
*vs*
Smith and
Boyden.

vested in the defendants in their personal, or representative capaci_ty. In the one case, the deed, through the mistake of the parties, was inoperative, and in the other, was void, for want of authority to make it; it must therefore be considered nugatory at all events.

It is obvious that the title of the defendants was the thing contracted for. This title, whatever it was, did not pass, but remained in the defendants, as before. There is, therefore, a total failure of the consideration for which the money was paid. And if there be a failure of consideration, the circumstance that the contract related to lands, and that there are covenants in the deed makes no difference. There is no distinction as to the operation of a sale, between contracts for real, and contracts for personal estate; there is evidently none in reason; and if we consider the thing contracted for to be the grantor's title, it will be found there is none in law.

It is true that when the grantor does legally convey all the title which is in him, & secures it by such covenants as are stipulated for, there can be no ground for recovering back the consideration altho' the title prove defective. The reason is obvious. The title of the grantor is the thing contracted for; if that pass, there is no failure of consideration, although it prove defective; but when the title does not pass, it is otherwise.

It is a settled rule that a party who has contracted for the purchase of real estate, and has made a deposit, may abandon the contract before conveyance is executed, and recover back his deposit. And there is certainly no difference between cases in which no conveyance has, in fact been made, and where the conveyance is inoperative. There is, indeed, this difference between cases of real and personal estate—in the former case there is no implied warranty as to the title contracted for; but the ground of our claim in this case is not that the title contracted for is defective, but that it was never conveyed to us. Sugden L. of V. 313. Peak Rep. 94. 3 Bos. & Pul. 162. 7 Mass. 14—30. 1 Day 167. 2 Day 252—437. 1 Dall. 428. 11 John. 50. 6 T. Rep. 606.

The circumstance that there were no covenants in the deed is of no importance; for the covenants relate to the sufficiency of the title, and have no bearing on the validity of the conveyance: the remedy sought, in this case, is not within their province, and the contingency on which we rely is wholly foreign to their purpose. 2 T. Rep. 483—note.

It has been decided that the covenants in a deed are a sufficient
consideration for a note, or for the payment of money, and that such a note could not be resisted on the ground that the title is bad; the
case would be the same, if the deed contained no covenants. But when the title does not pass at all, the covenants are no consideration; for in such case there is nothing for the covenants to operate upon.

The sale of a title to real estate is analogous to a sale of personal estate with a warranty as to quality, in which case the warranty is inoperative if the title do not pass. Besides the mere personal covenant, abstracted from the title of the grantor, is not the thing contracted for; it is a mere incident to the title, and is of no use or value without it. The defendants' covenant was a consideration in this case, only as connected with their title; independant of that, it is a totally different thing from that contracted for. There is, therefore, a failure of consideration as to the covenants.

Finally, the same mistake, which prevented the title's passing, renders the covenant nugatory, as to the purpose intended by it. The moment the mistake is discovered, the covenant becomes totally a different thing from what the parties intended.

Although it is true, that when a party attempts to enforce a contract under seal, he cannot maintain *assumpsit*; yet, where he has a right to abandon the contract, or there is an absolute failure of consideration, he may recover in an action for money had and received. So it is in cases of agreements under seal for the purchase of real estate, and in cases of the purchase of an annuity, which has been set aside.—So in the cases cited, where the money paid was recovered back, the conveyances were by deed with warranty.

The covenant in this case is a limited warranty, and furnishes no security against the acts of the defendants. The plaintiff was to take the title, in all other respects at his own risque. If he gets the title and it proves defective, he has no remedy unless the covenants afford one. But the ground of our claim is not that the title is defective, but that it was never conveyed to us; it still remains in the defendants, as before. This covenant, therefore, is no more an answer to our claim, than a warranty that a horse was free from the glanders, would be an answer to a claim for the money paid, because the horse was not delivered. Suppose the defendants had

*Addison,*
January,
1824.

Higley
*vs.*
Smith and
Boyden.

previously conveyed their right as administrators, what remedy has the plaintiff on this covenant of warranty?—he could shew no title to be protected, and, of course could shew no claim to damages; if he were to resort to that covenant it could furnish him no relief. The result is, that there is, in this case, a total failure of considera‑ tion, and the plaintiff is entitled to recover back the money paid.

*Bates* and *Everest* for the defendants.    The question which first arises upon the facts stated in this case is, whether Higley, the plain‑ tiff, would have been secure in his title to the land, and, therefore, safe in paying the consideration.    As to this question the defend‑ ants contend,

1. The first deed and mortgage in the case, being in their nature a conditional sale, and the condition not performed, no sale was completed; the administrator's authority to sell was not exhausted, but remained to support the second conveyance.

2. But if the order of sale did not authorize the administrators to secure the payment by mortgage, then the firt deed, which the ad‑ ministrators gave Higley, must be taken to have been an execution of the power, and the mortgage a security to the administrators on their own account, and, the lands coming back, belonged to them in their private right.    And as their quit‑claim deed to Higley upon the second sale, could not operate in their capacity of administra‑ tors, it bound them as private persons, or rather passed their title. 8 Mass. 162.  Sumner et al. *v.* Williams et al.

3. Higley would have been safe in paying the money, because when it was payable, and when the mortgage was foreclosed, the Court of Probate had previously in the presence of the heirs and administrators, considered the land as sold, and decreed the admin‑ istrators to pay the money arising from the sale, and no appeal was taken from this decree.    Under these circumstances, neither the heirs nor administrators, could have disturbed his title.    The heirs would have been precluded by this decree, and the administrators estopped by their deed to Higley.

Further objections to this action in its present form, may be ur‑ ged on the following principles:

1. If there was any contract or warranty, as to their authority to sell, as administrators, it arises not from parol, but from the *fact* of selling, as appears on the face of the deed; of course, if this act

amount to a warranty, it is a constructive covenant in the deed. *Addison,*
And when money is paid on a contract by deed with covenants, *January, 1824.*
there cannot be an implied promise to pay it back. The grantee
must rely on the covenants in his deed—express or constructive, or *Higley*
must shew a fraud. 2 T. Rep. 100, Toussaint et al. *v.* Martin- *Smith and*
nant. 6 T. Rep. 606, Crips *v.* Reade—Fonblanque Equity, 372 *Boyden.*
in notes.

2. A contract cannot be wholly rescinded, and an action of *assumpsit* maintained for the money paid, unless the parties can be put in *statu quo;* but in this case, Higley had the possession and valuable use of the land for several years. 5 East 449, Hunt *v.* Silk. 4 Bos. & Pul. 260, Taylor *v.* How.

The opinion of the Court was delivered by

WILLIAMS, J. The plaintiff claims a right to recover in this case, on the ground of a want of consideration for the sum paid to the defendants on the last purchase. He contends that the deed executed in May, 1818, was wholly inoperative as to conveying any title. And that the title attempted to be conveyed still remains in the defendants, as before the quit-claim deed was executed.— That if the title was, at the time this deed was executed, vested in the defendants, in their personal or private capacity, the deed was inoperative, inasmuch as it purports to convey their title as administrators. And, if the title was in them, in their representative capacity, the deed was void for want of authority to make it, the administrators having before sold real estate in pursuance of the order of the Court of Probate, sufficient for the purpose for which the sale was authorized; and that purpose having been once answered, the power ceased. If these premises were correct, it would not follow that the plaintiff is entitled to recover in this action. The deed which was executed by the defendants, purported to convey to the plaintiff in this action a certain tract of land, and the plaintiff might have protected his purchase, by such covenants as he deemed necessary for securing his title. If they attempted to convey as administrators, they could have been required to covenant that they were duly authorized.

This does not compare with that class of cases where the purchaser, who has paid the purchase money and has been ousted, before the conveyance is executed, has been permitted to recover

Addison,
January,
1824.

Higley
vs
Smith and
Boyden.

back the money paid in this form of action. Nor does it appear from the facts offered to be given in evidence, that the plaintiff was evicted from the land, in consequence of any defect in the title conveyed to him by the defendants; but on the contrary the recovery was had by these defendants, by virtue of the mortgage deed executed by the plaintiff, on the forfeiture of the lands therein granted, by reason of the non-performance by the plaintiff, of the condition threin contained. And we cannot say that this case is similar to any of those which have been cited, where this form of action has been maintained. It is unnecessary however, to examine those cases particularly, as the case is, on another ground clearly with the defendants.

The defendants, as administrators, had no interest in the land of their intestate. By virtue of their appointment as administrators they had only an authority to sell for the purposes which the law designates, when thereto authorized by the Court of Probate.— When thus authorized, they can pass to a purchaser, whatever title their intestate had, and take such security for the purchase money as may be satisfactory to themselves, either by a mortgage of the same land or of any other land, or in any other way, but they are at all events accountable for the sum for which they sell. If they take security by mortgage, on the foreclosure of the mortgage, whatever title was conveyed by the mortgage deed, becomes absolute in them in their individual capacity. It follows from this, that the defendants by their deed executed in September, 1814, complied with the order of the Court of Probate, and had no further authority to sell the real estate of their intestate, by virtue of that order. And on the foreclosure of the mortgage executed by Higley at that time, whatever title he derived to the land by the administrators' deed to him became vested and absolute in them in their individual capacity; and no order from the Court of Probate was required to entitle them to convey the land the title of which was thus vested in them. The only inquiry then is, whether by the deed of May, 1818, this title was conveyed to the plaintiff. The deed purports to convey all their the defendants' title. The grantors do not say that they convey in pursuance of any authority from the Court of Probate, or that they convey the title of their intestate, but all their right. It is true they describe themselves as administrators,

and in that capacity quit-claim to the plaintiff, and covenant in that capacity to warrant and defend the land granted. Describing themselves as administrators, is merely descriptive of the character in which they had acted, or the manner in which the estate came to them. And the covenant of warranty, notwithstanding they use the expression, "In our capacity as administrators," binds them personally. 8 Mass. 162, Sumner administator *v.* Williams et al. 3 Barnwell and Anderson 47, Burrell *v.* Jones. 2 Brod & Bing. 460, Childs *v.* Monins et al.

The defendants, as administrators, could have no title to pass; they had no authority at that time to convey any real estate of their intestate, and they could make no covenant which could affect the estate which they represented. On the whole the Court are of opinion, that the deed executed by the defendants, in May, 1818, passed the title of the defendants to the land in question, to the plaintiff; and the covenant of warranty contained in the deed created a persnal obligation on the defendants.

The plaintiff takes nothing by his motion, and judgment must be entered on the verdict.