### DUDLEY *against* CADWELL.

*A* mortgaged land to *B* ; and afterwards, while this mortgage was unpaid, mortgaged the same land to *C ;* the mortgage deeds containing the usual covenants of warranty.    *C* then bought in from *B* the first mortgage, and received from him a quit-claim deed.    On the same day, *C* executed and de-livered to *D* a mortgage deed, with like covenants, of the same land, to se-cure a debt due from *C* to *D.* It d'd not appear from the face of the two last-mentioned deeds, which bore the same date, nor from extraneous proof, which of them was first delivered; but they were obviously executed when the parties to both were together, as the grantee of one deed was a subscrib-ing witness to the other, and both were witnessed by the magistrate before whom both were acknowledged.    In an action of ejectment, brought by *D* against *A* for said land, after *A's* equity of redemption had become extin-guished, it was held, 1. that the reasonable presumption was, that *B's* deed to *C* was executed before *C's* to *D ;* 2. that if the fact were otherwise, still *B's* deed to *C* would operate to perfect the title of *D,* vesting, by estoppel, such an estate in *D* as *C* had covenanted for, and to the same extent as if *D* had originally acquired it by his deed from *C ;* 3. that the title of *D,* thus acquired, was available against *A,* though a stranger.

Though the title of a mortgagee is a peculiar one, giving him only a right of proceeding against the land, for the purpose, and as the means of enforcing payment of the debt, which is the principal thing ; though the land cannot be separated from the debt; and though a transfer of the land alone, to a stranger, if it could be made, would only place in him the legal title, as trus-tee for the owner of the debt, before payment, and of the mortgagor, after-wards: yet where *C,* the mortgagee of *A,* conveyed the premises to *D,* by way of mortgage, without then assigning the notes on which the mortgage

to *C* was predicated; but *C* afterwards delivered such notes to *D*, to complete an assignment of the mortgage; it was held, that these two transactions constituted an effective assignment, and placed the legal title in *D*, so as to enable him to sustain an action of ejectment.

*New-Haven,*
July, 1848.

Dudley
*v.*
Cadwell.

THIS was an action of ejectment for a parcel of land in the city of *New-Haven.*

The cause was tried, on the general issue, at *New-Haven, January* term 1848, before *Hinman,* J.

To establish a title in the plaintiff, he introduced evidence to prove, and claimed that he had proved, the following facts. On the 18th of *December* 1829, *John S. Cadwell,* the defendant, being the owner of the demanded premises, executed a mortgage deed thereof to *Nathaniel Bacon,* to secure the payment of a promissory note for 1400 dollars. On the 8th of *December* 1841, the mortgage debt to *Bacon* being unpaid, the defendant mortgaged the same property to *Ralph B. Steele,* to secure a note payable to him, and sundry indorsements made by him for the defendant's accommodation. Both these mortgage deeds contained the usual covenants of warranty and seisin. *Steele* having afterwards paid to *Bacon* his mortgage debt, *Bacon,* on the 10th of *February* 1842, executed and delivered to *Steele* a quit-claim deed of the premises. On the same day, *Steele,* by a deed containing the usual covenants, mortgaged the premises to *Erastus Dudley,* the plaintiff, to secure a note for 1000 dollars, payable in one year. The two last-mentioned deeds were dated on the same day; were acknowledged on the same day, before the same magistrate; the grantee of the latter was one of the subscribing witnesses to the execution of the former; and the magistrate was a subscribing witness to the execution of both. The notes, on which the mortgage deeds from the defendant to *Bacon* and to *Steele* were predicated, were exhibited in evidence, by the plaintiff; but they were delivered to him long after the execution of those deeds, and only a few days before the commencement of this action; and the notes payable to *Steele,* were then due to him.

The plaintiff offered no evidence that the quit-claim deed from *Bacon* to *Steele* was prior in time to the mortgage from *Steele* to the plaintiff, except what appears from the face of the deeds; but the plaintiff claimed, that sufficient appeared therefrom to authorize the jury to find, that the quit-claim deed

was in fact intended by the parties to take effect prior to said mortgage deed.

The defendant, on the other hand, claimed, that the legal effect of the quit-claim deed from *Bacon,* was, to release the mortgaged premises to him, the defendant, and to discharge the mortgage from him to *Bacon.*

The defendant further claimed, that the mortgage deed from *Steele* to the plaintiff, whether before or after the quit-claim deed from *Bacon* to *Steele,* conveyed no title to the plaintiff, which would enable him to recover in this action : that inasmuch as the mortgage debts were not, at the same time, formally assigned and transferred to him, it was only a mortgagee's mortgage of the premises as his own land, and therefore void.

The plaintiff claimed, that if the quit-claim deed from *Bacon* was, in fact, prior to the mortgage from *Steele* to the plaintiff, the legal title thereby vested in *Steele ;* which was, by the mortgage deed from *Steele,* conveyed to the plaintiff. But if the quit-claim deed was, in fact, subsequent to the mortgage, the plaintiff then claimed, that the title thereby acquired enured to him, and perfected his title, as against both *Steele* and the defendant ; and that the effect of *Steele's* mortgage to the plaintiff was, to transfer to him all *Steele's* interest in the premises, as mortgagee and as assignee of *Bacon's* mortgage ; and that it made no difference, whether the notes secured by *Bacon's* and *Steele's* mortgages were, or were not, in form asssigned to the plaintiff, at the time he took his mortgage deed from *Steele ;* but that the subsequent delivery of these notes to the plaintiff, by *Steele,* with the intention, thereby and by virtue of his mortgage deed, to transfer all his interest in said mortgages to the plaintiff, was sufficient to enable him to sustain this action.

The parties prayed the court to instruct the jury in conformity to their respective claims.

The defendant also objected to all the evidence introduced by the plaintiff, to prove a title in him, as irrelevant for that purpose.

The court overruled this objection ; and (*pro forma*) charged the jury in conformity to the claims of the plaintiff.

The jury returned a verdict for the plaintiff ; and the defendant thereupon moved for a new trial.

*New-Haven,*
July, 1848.
————————
Dudley
*v.*
Cadwell.

*Mix* and *J. G. E. Larned*, in support of the motion, contended, 1. That the court erred in permitting the evidence introduced by the plaintiff to go to the jury. In the first place, the notes of *Cadwell* to *Bacon* and *Steele*, on which their mortgages were predicated, were not admissible. These notes were over-due ; were not indorsed or assigned ; nor was any notice of transfer given to the maker. *Bishop* v. *Holcomb*, 10 *Conn. R.* 444. 447. There was no recognition of any transfer, by the person bound by the contract. *Mowry* v. *Todd*, 12 *Mass. R.* 284. Nor was any consideration paid by the plaintiff. *Jones* v. *Witter*, 13 *Mass. R.* 304. *Robbins* v. *Bacon*, 3 *Greenl.* 349. *Titcomb* v. *Thomas*, 5 *Greenl.* 282. *Briggs* v. *Dorr*, 19 *Johns. R.* 95. The notes had no connexion whatever with the plaintiff's title.

Secondly, *Bacon's* quit-claim deed was not evidence. To make it such, it must have been prior to the plaintiff's deed ; otherwise, it would be no evidence of title, even with the *Bacon* note passed to *Steele.*

Thirdly, the defendant's deeds to *Bacon* in 1829 and to *Steele* in 1841, were irrelevant, not being connected, by covenant, or in any way, with the plaintiff.

Fourthly, the plaintiff's deed was irrelevant, against this defendant, being a mortgagee's mortgage of his naked lien for his own debt, without the prior debt. It was inoperative and void, carrying no title.

Fifthly, all the plaintiff's evidence of title, when combined, was inadmissible. It evinced no title. There was no covenant against *Steele*, much less against this defendant ; nor was there any covenant connected with such evidence. It should all, therefore, have been excluded.

2. That the court erred in its charge to the jury. First, by instructing them, that they were authorised to find, from what appeared on the face of the deeds, that the parties in fact intended that *Bacon's* deed to *Steele* should take effect prior to his deed to the plaintiff. The priority was a *fact*, which the plaintiff was bound to prove. *Coleman* v. *Talbot*, 2 *Bibb*, 129. *Talbot* v. *Callaway*, *Hardin*, 35. *Holabird* v. *Burr*, 17 *Conn. R.* 561. The *intent* of the parties, if proved, does not prove priority in fact. The question is not what they *intended*, but what they *did*. The plaintiff should have called the attesting witness. 1 *Stark.*

New-Haven,
July, 1848.

Dudley
v.
Cadwell.

*Ev.* 319, 20.  1 *Greenl. Ev.*  95. *s.* 84. 604. *s.* 569.  *Abbott* v. *Plumbe, Doug.* 216.  *Call* v. *Dunning*, 4 *East*, 53.  As the plaintiff has neglected to do this, he cannot resort to the inferior evidence derived from presumption and inference.

Secondly, by instructing the jury, that *Steele's* deed, if after *Bacon's*, conveyed the legal title to the plaintiff.  In opposition to this doctrine, we claim the law to be, 1st, that the mortgagee, though vested with the legal title to the land, is not vested with it absolutely, for all purposes of ownership ; but, on the other hand, he has it, and can use it, for the sole purpose of ensuring and facilitating the collection of his debt, or for the enforcement of a duty ; and he can use it, even for this purpose, not in all the modes in which an owner can avail himself of his title, but only in the specific modes recognised as the necessary and proper means of effecting the object for which he holds it.  2dly, That the selling or conveying of it, whether absolutely or conditionally, separate from the debt for the protection of which it was placed in his hands, is not one of those recognised means.  But, on the other hand, 3dly, that such a use of it, by the mortgagee, is utterly inconsistent with the purpose of the mortgage, with the nature of his interest in it, with the rights of other parties, and with the policy of the law.  And for these reasons, 4thly, that the mortgagee's deed, purporting to convey the land, whether absolutely or conditionally, as his own, separate from the mortgage debt, is inoperative, and conveys nothing.  *Porter* v. *Seeley*, 13 *Conn. R.* 572, 3.  *Martin* v. *Mowlin*, 2 *Burr.* 978.  *Jackson* d. *Norton* v. *Willard*, 4 *Johns. R.* 41.  *Huntington* v. *Smith*, 4 *Conn. R.* 237.  *Clark* v. *Beach*, 6 *Conn. R.* 258 to 264.  *Cooper* v. *Davis*, 15 *Conn. R.* 560.  *Jackson* d. *Curtis* v. *Bronson*, 19 *Johns. R.* 325.  *Wilson* v. *Troup*, 2 *Cowen*, 231.  *Bell* v. *Morse*, 6 *N. Hamp.* 205.  *Ellison* v. *Daniels*, 11 *N. Hamp.* 274.  *Bulkley* v. *Chapman*, 9 *Conn. R.* 9.  The plaintiff could clearly be no stronger, if as strong, by the transfer of *Bacon's* mortgage to *Steele*, after, than if before, his own deed.  *Steele*, as second mortgagee, had no right of entry.  2 *Sw. Dig.* 169.  It could not enure to the plaintiff, as against *Steele*, as *Steele's* deed to the plaintiff was inoperative to pass the legal title, and contained no covenant to estop him.  *Patterson's* lessee v. *Pease*, 5 *Ham.* 190.  *Wallace's* lessee v.

*Miner*, 6 *Ham*. 366. *Platt on Cov.* 573, 4. 5thly, If it did, by covenant, estop *Steele*, it would not this defendant. This is not the case of one having no title, making a deed with warranty, and afterwards acquiring a title; but of one making a deed which was itself a nullity, and afterwards getting nothing recognised by law as a title. Estoppels are considered *odious,* as they shut out the truth. *Bradford* v. *Bradford*, 5 *Conn. R.* 132. *Smith* v. *Sherwood*, 4 *Conn. R.* 276 to 281. Here the defendant is in no way estopped; not by warranty in the plaintiff's deed, because he was neither party nor privy; nor by his own warranty in his deed to *Steele*, because *Steele* has not assigned to the plaintiff. *Rosc. Ev.* 311. *Platt on Cov.* 573, 4. *Steele's* warranty, if not void, binds only parties and privies—not strangers. *Co. Litt.* 352. *Coe* v. *Talcott*, 5 *Day*, 88. *Hoyt* v. *Dimon*, 5 *Day*, 479. *Carver* v. *Astor*, 4 *Pet.* 1. *Jackson* d. *Thurman* v. *Bradford*, 4 *Wend.* 619.

*Kimberly* and *J. S. Beach,* contra, contended, 1. That the defendant is estopped to deny that *Steele* had title, at the time of his conveyance to the plaintiff. In the first place, if the suit was in favour of *Steele*, the defendant's mortgagee, it is clear that he would be estopped. 1 *Sw. Dig.* 509. *Goodtitle* d. *Edwards* v. *Bailey*, *Cowp.* 597. Secondly, the covenants are to *Steele* and his *assigns*, and therefore run with the land. 1 *Sw. Dig.* 366. Thirdly, the assignee of a mortgagee is entitled to all the rights and remedies of such mortgagee. *Gould* v. *Newman*, 6 *Mass. R.* 239. *Hills* v. *Elliot*, 12 *Mass. R.* 26.

2. That the legal title was in *Steele*, at the time of his conveyance to the plaintiff; the quit-claim deed from *Bacon* to him having been executed prior to his conveyance to the plaintiff. This, in the first place, is the fair inference from the nature of the transaction and the attending circumstances. Secondly, it was submitted to the jury as a question of fact; and they, by their verdict for the plaintiff, have so found it.

3. That if *Steele* had not the legal title, at the time of his conveyance, but afterwards acquired it from *Bacon*, it enured to the plaintiff's benefit. In the first place, if one having no title, or an imperfect one, conveys with covenants of warranty, any title subsequently acquired by him, will, as

*New-Haven,*
*July, 1848.*

Dudley
*v.*
Cadwell.

against him and all claiming under him, enure to the benefit of his grantee. *Hoyt* v. *Dimon,* 5 *Day,* 479. 483. *Jackson* d. *Danforth* v. *Murray,* 12 *Johns. R.* 201. *Jackson* d. *Stevens* v. *Stevens,* 13 *Johns. R.* 316. Secondly, the same rule holds where the action is against any other than the grantor, or those claiming under him. *Middlebury College* v. *Cheney,* 1 *Verm. R.* 336. *Somes* v. *Skinner,* 3 *Pick.* 52. *Aldridge* v. *Kincaid, Littell,* 390.

4. That there is nothing objectionable in the *form* of the conveyance from *Steele* to the plaintiff. In the first place, it is executed with all the requisites for passing an interest in land. Secondly, though not in form an assignment, it will operate as such, to effectuate the design of the parties. *Bryan* & ux. v. *Bradley,* 16 *Conn. R.* 474. 487. *Bulkley* v. *Chapman,* 9 *Conn. R.* 5. *Goodtitle* d. *Edwards,* v. *Bailey, Cowp.* 597. *Hunt* v. *Hunt,* 14 *Pick.* 380. *Freeman* v. *McGaw,* 15 *Pick.* 82. Thirdly, it is of no importance between these parties, that a *condition* was annexed to the deed. The operative words precede the condition. Besides, if *Steele* had any thing which he could convey *absolutely,* he could also convey it conditionally.

5. That the notes were duly assigned to the plaintiff. In the first place, the jury have found, that before the bringing of the action, the notes were delivered by *Steele* to the plaintiff, "with the intention thereby, and by virtue of said mortgage, to transfer all his interest in the mortgaged premises to the plaintiff." Secondly, a mere delivery of a chose in action to an assignee, is a sufficient assignment of it. *Vose* v. *Handy,* 2 *Greenl. R.* 322. Thirdly, if they had never been assigned, or even if they had been paid by the defendant, the plaintiff could recover. *Smith* v. *Vincent,* 15 *Conn. R.* 1. *Doton* v. *Russell,* 17 *Conn. R.* 150.

CHURCH, Ch. J. *Cadwell,* the defendant, was once the owner of the land now in dispute; and on the 18th day of *December,* 1829, he mortgaged it to *Nathaniel Bacon,* and on the 8th day of *December* 1841, he mortgaged the same land to *Ralph B. Steele,* the first mortgage remaining unpaid; so that *Steele* came in as second mortgagee, and so remained, holding under a deed with covenants from the defendant, until the 10th day of *February* 1842, when he

bought in, from *Bacon*, the first mortgage, and received from him a quit-claim deed ; and thus, as the plaintiff claimed, *Steele* then had the entire legal title.   On the same day, *Steele* executed and delivered to the plaintiff a mortgage deed, with full covenants, of the same land, to secure the payment of a note of one thousand dollars.   Under this deed, the plaintiff now claims title.

In this part of the case, on the trial, the defendant objected, that in as much as the deeds from *Bacon* to *Steele* and from *Steele* to the plaintiff, bore the same date, *February* 10th, 1842, it did not appear from them, nor from extraneous proof, that *Bacon's* quit-claim deed to *Steele* was first delivered, and before the delivery of *Steele's* deed to the plaintiff; and therefore, by virtue of this deed, the plaintiff showed no title ; but that the effect of *Bacon's* deed was only to release his mortgage, and to extinguish it in favour of the defendant. And he claimed, that the jury should be so informed.

We think this claim cannot be sustained.   It was quite too much to ask the court to presume, as a fact, that *Steele* made his deed while *Bacon's* mortgage was still outstanding, and before he had removed an incumbrance which he was covenanting did not exist.   It was yielding enough to the defendant's objection, to concede, that these deeds of the same date, might probably have been contemporaneous.   They were executed when the parties to both of them were together, in the presence of the same subscribing witness and officiating magistrate.   And yet we think it more reasonable to suppose, that *Bacon's* deed was first executed, thereby conferring upon *Steele* the title and interest, which *Steele*, at the same interview, though afterwards, transferred to the plaintiff.   At any rate, such a construction should be given to this transaction and to the operation of these deeds, as legally to carry out that, which, as reasonable men, we cannot but know, was the purpose of the parties.   It would be absurd to treat this as a void security, on the possibility that the mortgage to the plaintiff was perfected before *Steele* had acquired his full title to the land he conveyed.

But the defendant, not satisfied with this view of the subject, urges his claim to the extent, not only of presuming that *Steele's* deed to the plaintiff was in truth first delivered, but also, that even the subsequent purchase of *Bacon's* title

by *Steele,* would not so enure to the benefit of the plaintiff, as to enable him to sustain this action against the defendant ; though *Steele's* deed to the plaintiff is with full covenants of warranty. *Bacon's* deed to *Steele* was made at some time or other—either before, or at the same time, or after, *Steele's* deed to the plaintiff. If it was executed afterwards, we have no doubt but it operated to perfect the plaintiff's title. The defendant denies that it would affect him, because he is a stranger to it, not claiming under *Steele,* and not bound by any estoppel created by the covenants in his deed.

It is true, that the defendant is a stranger ; his original interest, as mortgagor of this land, was extinguished, by the proceedings in bankruptcy, (*a*) and he now comes here defending, as a naked intruder, without pretence of title in himself, and only looking out for flaws in the plaintiff's title. Not a very favourable position surely, for that purpose ! Where a deed with covenants operates merely as an estoppel, the general principle is, that no one is bound by it but such as would be bound by the covenants running with the land, as the grantor, his heirs or assigns, privies in estate. But here is more—the covenants in *Steele's* deed alone operate as an estoppel ; and then comes *Bacon's* deed to *Steele,* as the defendant will have it, subsequently executed. This title, thus acquired by *Steele. eo instanti,* vested such an estate in the plaintiff as *Steele* had covenanted for, and to the same extent as if the plaintiff had acquired it originally by his deed. And such a title would have been good against all strangers and others who could not show an earlier or better one.

As *Bacon* has relinquished to *Steele* all title to the premises, and *Steele,* by his covenants, has estopped himself, and all his privies in estate, from claiming title ; where is it, unless it be in the plaintiff ? It has never been conveyed to the defendant. By whatever mode of conveyance a good and

(*a*) Allusion is here made to certain proceedings in bankruptcy, in the course of which *Cadwell,* the present defendant, was declared a bankrupt, and *Norris Wilcox* was appointed his assignee, who, in that capacity, conveyed the interest of the defendant in the land now in controversy to *Steele.* These proceedings appear upon the motion for a new trial, but are omitted in the preceding statement of facts, because they were not taken into consideration, by the court, in forming their decision—except perhaps the uncontroverted fact that *Cadwell* had no longer any equity of redemption.

entire title is made in a purchaser, this must be available against every body.

This doctrine was very fully and carefully considered, by the supreme court of *Massachusetts,* in the case of *Somes* v. *Skinner,* 3 *Pick.* 52., in which the principle which we now recognise, was applied. And in a later case in the court of *King's Bench,* the subject was much discussed, and the same views confirmed. *Doe* d. *Christmas* & al. v. *Oliver,* 10 *B. & Cress.* 181. (21 *E. C. L.* 50.) We refer also to the following authorities for confirmation. *Trevivan* v. *Lawrence* & al. 1 *Salk.* 276. *Weale* v. *Lower, Pollexfen,* 54. *Rawlyn's* case, 4 *Co.* 53. *Mason* v. *Muncaster* & al. 9 *Wheat.* 445. *Terrett* v. *Taylor,* 9 *Cranch.* 43. *Jackson* d. *Thurman* v. *Bradford,* 4 *Wend.* 619. This objection to the plaintiff's right of recovery, cannot be sustained.

But the defendant objects again, that *Steele* himself, being only a mortgagee, could not convey to the plaintiff the land mortgaged, only as accompanied by the assignment of the debt secured by the mortgage. And he claims, that no such assignment was ever made, or intended. The title of a mortgagee is peculiar. It is a legal title, but can hardly be said, now, to be classed with any description of title known to the common law. Originally, it was a conditional estate before forfeiture, and an absolute one afterwards. But courts of equity have so modified its character, and courts of law have so far recognised these modifications, that at this time, the title can be no better distinguished than by calling it *a mortgage* title, and nothing more. This gives to the mortgagee a right of proceeding against the land, for the purpose of enforcing payment of the debt, which is the principal thing; while the right to the land is given and exists, only as a means to this end. Therefore, it has been holden, that the land cannot be separated from the debt; and if it can be transferred in any way, that the assignee or grantee must hold it at the disposal of the creditor. *Jackson* d. *Norton* v. *Willard,* 4 *Johns. R.* 41. *Huntington* v. *Smith,* 4 *Conn. R.* 235.

In this state, we may consider it to be the settled law, ever since the case of *Phelps* v. *Sage,* 2 *Day,* 151., was decided, that payment of the mortgage money after forfeiture, does not divest the mortgagee of his legal estate, but gives only

a right to compel a reconveyance in chancery. *Smith* v. *Vincent,* 15 *Conn. R.* 1. *Doton* v. *Russell,* 17 *Conn. R.* 166. But this does not conflict with the principle of the case of *Smith* v. *Huntington,* nor recognise a separation of the land from the debt. Payment of the mortgage money constitutes the mortgagee a trustee for the mortgagor, who can compel the execution of the trust, by a reconveyance. *Gunn* v. *Scovill,* 4 *Day,* 234. And if a transfer of the land alone can be made with any effect, to a stranger, we think it can be, only to place in him the legal title, as trustee, for the owner of the debt, while it remains unpaid, and as trustee for the mortgagor afterwards, and without conferring upon him any independent right.

But however this may be, the facts in the present case do not call for any application of the principle suggested. Here, the land mortgaged was conveyed, by way of mortgage, by *Steele,* the mortgagee, to the plaintiff; and although the debt was not, at that time, in form assigned, to accompany the land, it became a question what was the intention of the parties, in this unusual proceeding? And this was submitted to the jury. It might well enough be inferred, that they supposed a conveyance or mortgage of the land alone would operate as an assignment or pledge of the debt, and at least, that a deed of the land was necessary to transfer a right to the land; and, added to this, the jury has found, that the subsequent delivery of the debts to the plaintiff, was made, to complete the entire assignment of the mortgage. Indeed, it is difficult to assign any other reason. This being so, these two transactions constituted an effective assignment, and placed the legal title in the plaintiff, so as to give him a right to sustain this action of ejectment.

Some other questions are suggested, by the motion; but as those already determined seem to us to dispose of the entire case, we pass them by.

We are very clear, that no new trial should be granted.

In this opinion the other Judges concurred, except ELLS-WORTH, J., who was absent.

New trial not to be granted.