Jarvis *v.* Aikens et al.

WILLIAM JARVIS *v.* DANIEL AIKENS, SARAH A. GODDARD, AND HENRY AND CATHERINE MURPHY.

*The record of deeds.    Purchaser, and subsequent purchaser of the grantor of land.    Estoppel running upon land, its effect, &c.*

When a deed is left for record in the usual way, and not recorded until some time after it is so left, yet when recorded, the record has relation back to the time the deed is so left and filed for record.

An estoppel, when it runs with the land, operates upon the title, so as actually to alter the interest in it, in the hands of the heir, or assignees of the person bound by the estoppel, as well as in the hands of such person himself.

And where A. conveyed in mortgage a certain piece of land to J., of which A. had no valid title at the time, and the mortgage was duly recorded, and afterwards A. took a durable lease of the said land of the rightful owner, and conveyed the same by deed of warranty to M., subject to the yearly rent created by the said lease, and the deed of A. to M. was duly recorded; *it was held,* that the instant A. became the owner, the covenants in his deed to J. passed the estate to J., and that there was no title in A., when he deeded to M., as the title had passed to J. and was vested in him; and that the title of J. must prevail, as against M.

APPEAL from the Court of Chancery.  The bill was brought by the orator to foreclose a mortgage, dated the 19th day of July, 1845, and to foreclose the equity of redemption, of Daniel Aikens and those claiming under him, of three pieces or parcels of land in Barnard, described in said bill and mortgage, as follows : one piece of about one hundred acres, called the " Paul Ellis Farm."  One other piece of land containing about one hundred acres known as the " Lease Lot."  And also a piece of land containing about fifty acres.   The bill was in the usual form.

Sarah A. Goddard, answering says, that she claims so much of·

the land described in the orator's bill, as is therein described and called the " Paul Ellis Farm," and no more, and that her title to the same is by deed from said Daniel Aikens, to one Isaac Angell, of a date prior, and before the deed from said Aikens to the orator, and by deed of mortgage from said Isaac Angell to this defendant; that she did not know or suspect at the time she received said mortgage from said Angell, that the orator or any one else, had or pretended to have any title to said " Paul Ellis Farm," except the said Angell, nor did the town records of said Barnard, show any title in said Aikens or the orator; that this defendant believes was valid to convey said premises.

Henry Murphy answering says, that he claims title to a certain part of the mortgaged premises described in the orator's bill as the " Lease Lot." And further says, that he will insist in defence to said action, that on the 20th day of November, 1848, the said " Lease Lot" belonged to the Society for the propagation of the gospel, &c., subject to such interest as the orator might have by virtue of the mortgage deed from said Aikens to him, mentioned in said bill of complaint, which interest extended only to the unexpired portion of the lease formerly made by said Society to one Abial Frye, dated January 1st, 1836, for the term of thirty years thereafter. That on said 20th day of November, 1848, said Society executed a durable lease of said land to the said Aikens, and that on the 27th day of November, 1848, the said Daniel Aikens conveyed to this defendant by deed of warranty the same premises, subject to the payment of a yearly rent to said Society, in consideration of $3,00, paid by this defendant.

That on the first day of January, 1836, said Society were the exclusive owners of the premises, and did lease the same to said Frye for thirty years for a certain reserved rent; that said Frye gave a mortgage deed to one Willard Caryl, and said Caryl afterwards quit-claimed to one A. Howe and others, all of whom quit-claimed their interest to the said Aikens.

That afterwards, and previous to the time of the execution of the orator's deed by the said Aikens, said Aikens contracted in writing for the sale of the same to one William Dutton, and that he took possession under said contract; that afterwards while said Frye and said Dutton were both in possession, said Society commenced their ejectment suit for the possession of the premises, in

the Windsor County Court, and at the November Term of said court, in 1846, did recover the possession of the same.

Catherine Murphy answering, sets forth the same facts, and says that said Henry Murphy, before the bringing of the orator's bill, executed and delivered to her a deed of the said premises, which deed is now in full force, by the reason of which, this defendant claims the premises aforesaid.

Daniel Aikens did not answer.

Testimony having been taken upon the matters in issue between the orator and said Sarah A. Goddard, the cause, December Term, 1852, was heard on the bill and answers of said Henry and Catherine Murphy; and on the bill, pleadings and evidence, as to said Sarah; and at said term, the Court of Chancery decreed that as to said Henry and Catherine Murphy, and said Sarah A. Goddard, and the several parts of the premises aforesaid by them, respectively claimed, being the "Paul Ellis Farm," so called in the bill, and the "Lease Lot," so called in the bill, stand dismissed out of said bill; and foreclosure on the other premises.

*Coolidge & Safford* for orator.

*S. Fullam* for defendant Goddard.

*O. P. Chandler* for defendants H. & C. Murphy.

The opinion of the court was delivered by

BENNETT, J. This case comes up by an appeal from the Court of Chancery. The bill is brought to foreclose the equity of redemption, of Daniel Aikens and those claiming under him, in certain parcels of lands, described in the bill of complaint, and in the mortgage deed from said Aikens to the orator, bearing date the 19th day of July, 1845, and recorded the same day.

The first question relates to that portion of the mortgaged premises called in the bill the "Paul Ellis Farm." To this farm the defendant Sarah A. Goddard claims a paramount and *prior* title, as derived from Daniel Aikens. It seems that Aikens conveyed this farm to one Isaac Angell in fee, on the 22d day of March, 1845, and on the same day, it is filed for record in the town clerk's office in the usual way where deeds are left for record. Though it may

be true, that Angell's deed was not in fact spread upon the record until after the mortgage deed to Jarvis, yet when recorded, the record has relation back to the time the deed is filed for record. This has often been decided. The certificate of the town clerk upon Angell's deed is, "Received the above deed for record March 22, 1845, 6 o'clock. Attest, Daniel Aikens, Town Clerk."

There is nothing in the case to show, that this deed was not left by Angell, with the town clerk, with instructions to record it, and in the usual way, and this is the import of the certificate of the town clerk. If when the plaintiff took his mortgage from Daniel Aikens, this deed was suppressed, through the fault of the town clerk, Angell should not suffer. He had done his duty. As Sarah A. Goddard has the title from Angell, she must prevail as to this lot, and she was correctly dismissed by the Chancellor.

The more important question is, in relation to the "Lease Lot" so called. Though it may be true that this lot was, in 1836, leased by the Society for the propagation of the gospel in foreign parts, to Abial Frye for a period of thirty years ; and he mortgaged it to William Caryl; and though the premises may have come by quit-claim to Daniel Aikens, yet it is clear, that without resort to what shall be the effect of the recovery in ejectment, by the Society against Frye and Dutton, the present plaintiff cannot rely upon any title which Aikens had to this lot under the Frye lease. The title which Caryl had from Frye was but a mortgage, and there is nothing in the case to show, that Caryl's debt against Frye is outstanding, or that it passed into the hands of Aikens. His title is stated to be by quit-claim deed. As our courts have decided, that a mortgagee cannot maintain ejectment after the mortgage debt has been paid, and that to rebut the presumption of payment, the mortgage notes should be produced, or accounted for otherwise ; it would seem to follow, that so far, at least, there was no title in Aikens for him to convey ; but it is claimed that Aikens, after he had executed his mortgage to the plaintiff, took a durable lease of this lot from the propagation Society, and that this after title, inured to the benefit of Jarvis.

It appears, that the date of the Society's lease to Aikens was the 20th day of November, 1848, and recorded the same day ; and that on the 27th day of November, 1848, Aikens conveyed, by a deed of warranty, the lot to Henry Murphy ; and after this, Murphy

conveyed by a deed of warranty, to Catherine Murphy; and the question is, which title shall prevail.

It is not seriously claimed by the counsel for Catherine Murphy, but what the subsequent title acquired by Aikens, would inure to the benefit of Jarvis, so as to estop Aikens and his heirs from claiming title against him and his assignees; but it is said that the principle should not be applied, as between the purchaser and a subsequent purchaser from the grantor, and that to so apply it, would be at war with our registry system. This is a point of some importance, and well deserves consideration. We need cite no authorities to show, that Aikens himself would be estopped from setting up title against Jarvis, because he might sue Aikens on his covenants, if he was not estopped; and the law abhors *circuity* of action; but it is said, if Jarvis can claim the premises, as against Aikens, to save *circuity* of action, yet as against Murphy no such reason exists, and the only question is, which shall be compelled to resort to the covenants in Aikens' deeds, Jarvis, or Murphy? In *Trevivan* v. *Lawrence et al.*, 1 Salk. 276, it was held that the parties, and all claiming under them, were bound by an estoppel, and the court put the case, as between the purchaser and a subsequent purchaser from the grantor. In the same case, reported in 6 Mod. 258, and Ld. Ray. 1051, LORD HOLT cites 39 Ass. 18, and speaks of an estoppel, as running upon the land, and altering the interest of it—as creating an interest in, or working upon the estate in the land, and as running with the land to whoever takes it. The covenants in Aikens' deed to Jarvis, may well be said to have a double operation, first as an estoppel, and secondly to pass the estate, the instant that Aikens became the owner.

The covenants bound Aikens, as an *estoppel*, until he took his durable lease from the Society, and then the estate, which devolved upon him, fed the estoppel, and the estate created by the covenants in Aikens' deed by way of estoppel, ceased to be an estate by estoppel *only*, and became an interest, and gave the orator precisely what he would have had, in case the durable lease had been executed to Aikens before his mortgage deed to the orator. The estoppel, when it runs with the land, operates upon the title, so as actually to alter the interest in it, in the hands of the heir, or assigns of the person bound by the estoppel, as well as in the hands of such person himself. It was said, by LANE, J., in the case of

*Douglass* v. *Scott*, 5 Ohio, 198, " that the obligation created by *es-*" *toppel,* not only binds the party making it, but all persons privy to
" him ; the legal representatives of the party, those who stand in his
" situation by act of law, and all who take his estate by contract,
" stand in his stead, and are subjected to all the consequences,
" which accrue to him. It adheres to the land, is transmitted with
" the estate, it becomes a *muniment of title,* and all who afterwards
" acquire the title, take it subject to the burden, which the exist-
" ence of the fact imposes upon it." We think this view is in ac-
cordance with the adjudged cases. See Rawlins' case, 4 Coke 52,
*Weale* v. *L——,* Pollexfen 60. *Christmas et al.* v. *Oliver,* 10 Barn.
& Cres. 181. Coke Littleton 352 (a.) *Wark* v. *Willard,* 13 N.
H. 389. *White* v. *Patten,* 24 Pick. 324. *Dudley* v. *Cadwell,* 19
Conn. 227. *Bank of Utica* v. *Mersevall,* 3 Barb. Ch. R. 567. In
this view of the case, our registry system can have no control of
the question. There was no title in Aikens, when he deeded to
Henry Murphy, it had before passed to Jarvis, and was vested in
him. In the case from the 24 Pick. 324, the point was specially
made by counsel, that this doctrine was in conflict with their regis-
try system ; but the court did not regard the objection. The same
objection has been made in other cases, but without effect.

We see no reason, why this doctrine should not be extended to a
mortgage deed with the usual covenants, as well as to an absolute
deed, and indeed in the case of the 24 Pick. the claimant's title was
under a mortgage deed.

Though it may be true, that before the lease was executed by
the Society to Aikens, Henry Murphy paid sixty dollars to the So-
ciety towards rent, which was in arrear, and which was to be a
part of the consideration which he was to pay to Aikens for his
deed ; but this cannot create a resulting trust in Murphy, to any
portion of the land, which can avail against the legal title of Jar-
vis. It was in fact money paid by Murphy to the use of Aikens.
Nothing can be made out of this, that can aid Murphy in this con-
troversy.

We think then, that the decree of the Chancellor should be re-
versed, as to Henry and Catherine Murphy with costs ; and a de-
cree of foreclosure pass against them as to the " Lease Lot," and
in other respects affirmed.