The opinion concurred in by a majority of the Court was-drawn up by
Davis, J.
The defendant, having claims against one Charles Hanson, commenced suits thereon, and caused his right of redeeming certain real estate, previously mortgaged by him, to be attached, September 15, 1848. Judgments were recovered February 17, 1854; executions were issued March 17, and Hanson’s right of redemption seized thereon the same day; and, on April 22, of the same year, the officer duly sold to the defendant all of Hanson’s right to redeem, which he had at the time of the attachment.
October 23, 1854, the defendant sold to the plaintiff, by a quitclaim deed, "all the right, title, and interest acquired by him by virtue of his deed” given to him by the sheriff' upon the sale referred to. The plaintiff, upon inquiry, afterwards ascertained that Hanson, after the attachment, and before the seizure of his right of redemption upon the executions, had fully paid the mortgage debt. But the mortgage had not been discharged, either by an entry upon the record, or in any other maimer.
The plaintiff claims that such payment was itself a discharge of the mortgage, so that Hanson’s title was no longer a right of redemption, which could be sold by the sheriff, but a fee, upon which the execution should have been extended. And he has brought this suit, to recover back the purchase money, on account of the failure of title.
The defendant docs not concede that the plaintiff would *132 be entitled to recover, if there was a failure of title, as he has alleged, as he gave a mere release, with no covenants of title. But he contends that the mortgage was not discharged hy payment, merely; and that, if the mortgage debt had been paid, it was a benefit, ancl not an injury, to the plaintiff.
In the case of Martin v. Mowlin, 2 Burrow, 978, Lord Mansfield is reported to have said, "a mortgage is a charge upon the land, and whatever would give the money will carry the land along with it, to every.purpose. The estate in the land is the same thing as the money due upon it. It will be liable to debts. ” It will go to executors. ,* * The assignment of the debt, or the 'forgiving it, will draw the land after it, as a consequence, though the debt were forgiven only by parol,” &c.
The- case under consideration was a suit at law; and the confounding of principles of law with those which prevail in equity, only, is probably due to the reporter, whose; language it is. For he admits, in publishing his notes of cases, that he did not always take down the restrictions with which a proposition was qualified, "to guard against its being understood universally, or in too large a sense.” 1 Burr., 9.
It is worthy of notice that in that case, as generally in English mortgages, the condition was, that, upon performance, the mortgagee should reconvey the premises:. — and not, as in this country, that the deed should be void. It would seem- therefore to be certain that payment on the law day would not have revested the title in the mortgager, without such reconveyance. Harrison v. Owen, 1 Atk., 520; 2 Cruise, (London ed.,) 110. Upon mortgages to be void upon performance, such as are usually given in the United States, it is everywhere conceded that payment before condition broken will divest the-mortgagee of his title, without reconveyance, or other discharge. 1 Washburne on Real Prop., 543; Whitcomb v. Simpson, 39 Maine, 21; Holman v. Bailey, 3 Met., 55.
In this country there has been a constant tendency to ap *133 ply the views attributed to Lord Mansfield indiscriminately, at equity, and in law. Sustained by such jurists as Chancellor Kent, Judge Story, and Mr. Greenleaf, it is not strange that the weight of authority should turn in that direction. But in Maine, Massachusetts, Connecticut, and in several other States, the old doctrines of the common law still prevail. Though in equity the mortgage is an incident, and the debt the principal thing, at law the mortgage is a conveyance of the title, to bo defeated upon a condition subsequent-. Unless thus defeated, the legal title is ir^ the mortgagee. He may assign the debt without the mortgage, in which case he holds the mortgage in trust for such assignee. Or, he may assign the mortgage without the debt, or, the mortgage to one, and the debt to another, the owner of the mortgage always holding in trust for the owner of the debt. So that the assignment of the debt operates as ■the equitable, but not as the legal assignment of the mortgage. And payment of the debt, after condition broken, does not divest the mortgagee of his legal title; but the mortgager must resort to equity for a release, or a reconveyance. These principles, though extensively denied in this country, are sustained by so many decisions in the States before referred to, that it is unnecessary to cite them. 1 Washburne, 553 ; 1 Hilliard on Mort., 476.
Mr. Greenleaf collects the authorities, in the first volume of his edition of Cruise, and in support of the opposite doctrine suggests that the acceptance of payment, after condition broken, is a waiver of the condition, and has the same effect as a. performance of it. 1 Greenl. Cruise, 595. But this is more specious than sound.
A waiver of the condition may operate to confer the same rights as a performance of it. This is the case in regard to bonds for the conveyance of real estate. But it does not follow that such a ivaiver can operate, by our laws, to convey or release a legal title to real estate. It cannot do so, in the case-of a mortgage, any more than of a bond. So that this theory, like all others in support of the doctrine, rests upon *134 a denial that the mortgagee has the legal title, until after foreclosure.
But another answer to it is, that such an acceptance of payment is not a waiver. A waiver is a voluntary relinquishment of some right. But the mortgagee relinquishes nothing in such a case. The mortgager pays it as a matter of right; and it is not at the option of the mortgagee whether it shall be paid or not, until the right of redemption expires. A receipt of payment after that would be a waiver of the forfeiture; but before forfeiture, the mortgager, by payment, acquires a right to a release, or a reconveyance, not on the ground of waiver, but of contract, and of law.
But though it is well settled in this State, that upon payment after condition broken, the legal estate remains in the mortgagee, until it is released, so that the mortgager cannot maintain a writ of entry against him; it is equally well settled that,' in such case, the mortgagee, not being in possession, cannot maintain such an action against the mortgager. Hadlock v. Bulfinch, 31 Maine, 247; Williams v. Thurlow, 31 Maine, 392. ‘ The reason assigned for this, is, that by our statutes, in all actions upon .mortgages, there must be a conditional judgment; and, if the debt has been paid, so that there cannot be such judgment, the demandant cannot recover at all. Wade v. Howard, 11 Pick., 289 ; Webb v. Flanders, 32 Maine, 175; Gray v. Jenks, 3 Mason, 520. Where there is no provision of statute to prevent, as in an action of forcible entry and detainer, it has been held that a suit for possession may be maintained by-the mortgagee, after payment. Howard v. Howard, 3 Met., 548, 557.
The mortgagee, after such payment, holds but a naked trust, without any interest. As in other like cases of holding in trust, he can derive no benefit from it, and can convey no title except as subject to it. And the estate cannot be taken for his debts, though it can be taken for the. debts of the cestui que trust. As the mortgagee’s title in such case is of no value, there can be no motive for transferring *135 it to a third party; and therefore it is seldom done in this country. That it may be done, would seem to admit of no doubt. Dudley v. Cadwell, 19 Conn., 218. Such a deed, says Wilde, J., in Wade v. Howard, before cited, conveys "the legal estate, or a satisfied mortgage; such an estate as is frequently purchased in England, to be tacked to a subsequent mortgage.” Numerous cases of this kind may be found cited in the English editions of Cruise, vol. 2, c. 5, which Mr. Greenleaf has omitted, because the doctrine of tacking mortgages does not prevail in the United States.
There is no difficulty in applying these principles to the case at bar. When the executions against Hanson wore issued, he had paid the mortgage debt, but the mortgage itself had not been discharged. If the payment had been before the condition had been broken, that would have re-vested the estate without any discharge; and there would have been nothing to seize on the execution. Grover v. Flye, 5 Allen, 543. But payment after breach of the condition had no such effect. His interest in the premises was clearly liable to be seized on the executions; and the only question is, how should the levies have been made; — by a sale? or by an extent?
If, at the time of seizure upon the executions, there had been not only a payment of the mortgage debt, but a release of the mortgage, recorded in the registry of deeds, then there could have been no sale of an equity of redemption, though the mortgage was in force at the time of the attachment upon the torits. Foster v. Mellen, 10 Mass., 421. In Pillsbury v. Smyth, 25 Maine, 427, the report of the case does not show whether the discharge of the mortgage had been recorded. And we need not determine whether, if there is a release, but not on record, the officer may not proceed as if none had been made. Eor in this case no release had been made, either upon the record, or otherwise.
'By the R. S., c. 90, § 14, "when the amount due on a mortgage has been paid to the mortgagee, or person claiming under him, by the mortgagor, or the person claiming *136 under Mm, within three years” from proceedings for a foreclosure, "he may have a bill in equity for the redemption of the mortgaged premises, and compel the mortgagee,' or person claiming under him, to release to him all his right and title therein." And, by c. 76, § 29, "rights of redeeming real estate mortgaged, may be taken on execution and' sold." It was just such a right of redeeming a paid mortgage which Hanson owned, when it was seized on the executions. The same title passed by the sale that would have passed by án extent. The defendant therefore conveyed a good title to the plaintiff; and the latter, having suffered no loss, is not entitled to recover.
Whether, if there had been no right of redemption in existence when the plaintiff purchased of the defendant, -he could recover back the consideration paid, on the ground of a mutual mistake of fact, is a question which becomes, immaterial. See the case of Earle v. Re Witt, with the able dissenting opinion of Merrick, J., 6 Allen, 520.

Exceptions sustained.

Verdict set aside.

Walton, Dickerson, Barrows and Daneorth, JJ., concurred.
Appleton, C. J., and Cutting, J., concurred in sustaining the exceptions for another cause.
Appleton, C. J.
The plaintiff purchased of the defendant his right, title and interest in certain real estate, and received from Mm a deed of release without covenants. He was content to rely on a mere deed of quitclaim. He might or might not thereby acquire a good title. The price paid would depend upon the risk to be run. Instead of requiring his- vendor to warrant the title to the land purporting to be conveyed, the vendee was satisfied to assume that risk, and, having assumed, he must bear it. The law. seems to be well settled in this State, that a mere failure of title furnishes no ground for recovering back money paid as the consideration of a quitclaim deed. Joyce v. Ryan, 4 Greenl., *137 101; Soper v. Stevens, 14 Maine, 133. There being no fraud, circumvention or concealment, the consideration cannot be recovered back. Emerson v. Washington County, 9 Greenl., 89; Bean v. Flint, 30 Maine, 225; Treat v. Orono, 26 Maine, 217. No one would pay for a deed of release, unless he supposed he was to gain something thereby, either by thus obtaining a good or quieting a doubtful title.- If, then, one takes a deed of quitclaim, it is not to be converted into a warranty, if he gain nothing thereby. If the grantee is to have the benefits of a warranty when he neglects to take any covenants in his deed, the distinction between deeds of release and of warranty will be abolished, and every quitclaim will become a deed of warranty to the extent of its consideration. The plaintiff did not pay for a deed with covenants, and he is not entitled to the protection which such a deed would afford him.
The mistake which the grantee in a deed of quitclaim makes, when he pays for a release which is valueless, is not a mistake of fact, which will enable him to recover back the money paid. Every one who takes such a deed expects to be benefited thereby, else he would not purchase, but, if there be no covenants, he risks the goodness of the title acquired.
Neither would the plaintiff be better off in equity. Abbott v. Allen, 2 Johns. Ch., 523; Gouverneur v. Elmendorf, 5 Johns. Ch., 84. " The vendor selling in good faith,” remarks Chancellor Kent, in the case last cited, " is not responsible for the goodness of title beyond the extent of his ¿ovenants.” In the case before us the vendor has given no covenants.
Those views of the law seem to have been generally adopted. In Holden v. Curtis, 2 N. H., 61, it was held, that in deeds of quitclaim, when the title failed, the price paid could not be recovered back. In Getchell v. Chase, 37 N. H., 106, the same question again received the consideration of the Supreme Court of New Hampshire, and it was there held, in the absence of fraud, that no action could be main *138 tained for the recovery of the consideration paid for a quitclaim deed of land, though the grantor , had no title. In Clark v. Sigourney, 17 Conn., 510, it was held that a deed of release, without any covenants of title, was a sufficient consideration for a note given therefor. " By the very terms of such a contract,” remarks Stores, J., "the risk and hazard of the title is assumed by the releasee; and to hold that he is excused from performing, because he happened to acquire no interest by the release, would be to throw that risk and hazard upon the releasor, contrary to the plain intent of the parties.” The same doctrine has been held in Vermont, in Higley v. Smith, 1 Chip., 409. The Supreme Court of Pennsylvania, in Dorsey v. Jackman, 1 S. & R., 42, and in Kerr v. Kitchen, 7 Barr., 486, decided that a purchaser of real estate could not recover back the purchase money paid for a quitclaim deed, when the title proved defective and there was no fraud. In Earle v. Dewitt, 6 Allen, 520, this question was very elaborately discussed, and it was then held, in accordance with the earlier decisions in Massachusetts, that a mere failure of title furnishes no ground for recovering back money paid upon a quitclaim deed. The plaintiff has got all he bargained for — the title of the defendant. The defendant has conveyed all he intended to convey — whatever interest he had in the premises released. No covenants were given nor asked for. No fraud is pretended or alleged. In such case the plaintiff has no remedy. Though he may have sustained a loss, he has suffered no wrong. Deceptions sustained.

New trial granted.

Cutting, J., concurred.