# SUPREME JUDICIAL COURT

##### FOR THE

## COUNTY OF WORCESTER, OCTOBER TERM 1863, AT WORCESTER.

###### PRESENT:

Hon. GEORGE T. BIGELOW, CHIEF JUSTICE.
Hon. CHARLES A. DEWEY, ⎫
Hon. THERON METCALF, ⎬ JUSTICES.
Hon. EBENEZER R. HOAR, ⎪
Hon. REUBEN A. CHAPMAN, ⎭

## ALICE C. EARLE *vs.* ALEXANDER DE WITT.*

No action lies to recover back money paid as the consideration for a quitclaim deed whicn contains covenants of warranty against all persons claiming under the grantor, both parties having acted under the belief that the deed conveyed a valid title, although the title to the land described, which was derived by the grantor from the assignee of an insolvent debtor, wholly fails, by reason of a want of jurisdiction in the judge of insolvency who assumed to act in the case; and parol evidence is inadmissible to prove an agreement entered into at the time of the execution of the deed that the money should be repaid by the grantor, in case of a failure of title. MERRICK, J. dissenting.

Persons acting as assignees of an insolvent debtor, but who, by reason of a want of jurisdiction in the judge of insolvency who assumed to act in the case, had no authority to do so, executed a quitclaim deed of the equity of redemption of certain real estate of the debtor to the defendant, who afterwards, by a quitclaim deed which contained covenants of warranty against all persons claiming under himself, conveyed all his interest in one undivided half of the premises to the plaintiff, for a price agreed upon and paid

---

* This case and the following one were argued in October 1862.

by the latter, all parties believing the proceedings in insolvency to be valid. At the time of executing this deed, the defendant entered into a collateral contract in writing, by which he agreed that no claim should be made for payment of the principal or interest of the claims secured by certain mortgages upon the premises until a certain time, and that he would not dispose of the property under a power of sale contained in a mortgage held by himself, and that, if necessary to prevent other parties holding mortgages thereon from collecting their claims or taking possession of the property, he would take an assignment of said mortgages and notes, and pay the same himself, holding them against the plain-tiff, if payments should be made by the plaintiff at extended times as therein specified, as a substitute for the payment of the notes according to their tenor. *Held*, that the plaintiff could not maintain an action of assumpsit to recover back the money paid to the defendant as the consideration for said deed, nor be allowed to prove an oral agreement, made at the time of executing the deed, that the money should be repaid in case of a failure of the title. MERRICK, J. dissenting.

CONTRACT to recover back money paid by the plaintiff to the defendant.

At the trial in this court, before *Merrick*, J., it appeared that on the 24th of July 1858 the defendant purchased at auction of William M. Bickford and Fitzroy Willard, who claimed and were believed by all the parties to be the assignees of Henry D. Stone, an insolvent debtor, certain factory property, real and personal, in North Oxford, formerly belonging to Stone, and consisting of woollen and cotton mills and machinery, for the sum of $3200; and on the 26th of the same July, Bickford and Willard executed a deed of quitclaim thereof to the defendant. The above estate was purchased by the defendant in pursuance of a previous arrangement between him, the plaintiff and Henry H. Chamberlin, by which the defendant was to make the purchase and afterwards convey one undivided fourth part thereof to the plaintiff and a like share to Chamberlin, and the parties were to contribute towards the purchase money in proportion to their respective interests; which was accordingly done.

On the 27th of the same July, a new agreement was made between the plaintiff, defendant and Chamberlin, by which the defendant agreed to convey the whole estate to the plaintiff and Chamberlin in equal shares, and in consideration thereof they agreed to assume the whole consideration paid for the deed from Bickford and Willard, and also to pay to the defendant the sum of $6000. This agreement was carried into effect, the

plaintiff and Chamberlin each paying to the defendant the sum of $3800 ; and the defendant executed to the plaintiff a deed of quitclaim, dated July 26, 1858, of " all the right, title and interest in one undivided half of the real and personal estate in Oxford, formerly belonging to Henry D. Stone, of Worcester, this day conveyed to me by William M. Bickford and Fitzroy Willard, as assignees of said Stone, which I have under and by virtue of said deed from said Bickford and Willard, but reserving to myself all my rights by virtue of any mortgages I may hold on said property now or hereafter." The deed also contained the following covenant: " And I do covenant to warrant and defend said granted and quitclaimed premises to the said Alice C. Earle, her heirs and assigns forever, against the lawful claims and demands of all persons claiming by or under me, except by virtue of mortgages on said property."

At the same time and as a part of this bargain the defendant executed to the plaintiff and Chamberlin the following instrument not under seal :

" Whereas I, Alexander De Witt, now hold four notes signed by Henry D. Stone, dated December 24, 1857, for $4025 each, which notes are secured by a mortgage on the real estate lately belonging to said Stone, in Oxford, two of which notes are now due, and the remaining notes fall due in three and six months, and the said De Witt holds a note signed by Stephen Barton, Jr., for the sum of $3000, dated September 24, 1852, and secured by mortgage on the same real estate, and the Worcester County Institution for Savings and Delano Pierce also hold mortgages on said real estate, or portions thereof, to secure notes held by them, and Henry H. Chamberlin and Alice C. Earle of Worcester have purchased the real estate of me, subject to all the aforegoing mortgages, and they are desirous of a longer term for the payment of the mortgage notes held by said De Witt and others, now in consideration of their purchase of me of said real estate I hereby agree that no claim shall be made upon them for the payment of the principal or interest of said mortgage notes till January 24, 1859, and that if they then pay all the interest on all said notes and three thousand dollars toward

the principal of said notes, and shall, at the expiration of each six months thereafter, pay all the interest due on all of said notes that remain unpaid, and three thousand dollars toward the principal of said notes, till the full amount of said notes and interest has been paid, I will not enforce the payment of the notes according to their tenor, nor dispose of the property under the power of sale contained in the mortgage; and if necessary to prevent other parties now holding mortgages on said property from collecting said notes or taking possession of said property I will take an assignment of said mortgages and notes, and pay the same myself, holding them against the said Earle and Chamberlin, and I will accept the aforesaid payments of three thousand dollars and all the interest semi-annually, until the notes and interest are paid, as a substitute for the payment of the notes according to their tenor. Alex'r De Witt."

On the 11th of August 1858 the plaintiff executed a deed of her undivided half, similar to that received by her of the defendant, to Tower & McGaw, and received back from them their promissory notes for the entire purchase money, secured by mortgage on the estate. No part of the principal or interest of these notes has ever been paid, and the plaintiff now holds them; and at the trial produced them and offered to surrender them to the defendant, who declined to accept them.

On the 4th of February 1860 the proceedings in insolvency under which Bickford and Willard were chosen assignees were set aside and annulled, for the reasons stated in *Grafton Bank* v. *Bickford*, 13 Gray, 564. On the 9th of the same February new proceedings in insolvency were instituted by creditors of Stone, under which other assignees were chosen, who made a conveyance of the premises to Bela J. Stone. Prior to the decree of February 4th, Chamberlin and one Borroughs had acquired the entire title to the estate, so far as the same could be derived from Bickford and Willard, and, either alone or jointly with other parties holding under the deed of De Witt, have been in possession of the estate since the 28th of July 1858, claiming title under said deed. Bela J. Stone and the new assignees have commenced suits against Chamberlin and

Borroughs, to recover possession of the property, and the mesne rents and profits, which suits are now pending.

The estate belonged to Henry D. Stone at the date of the first insolvency proceedings. At the date of the deed of the defendant to the plaintiff, all the parties were ignorant that there was any irregularity in the first insolvency proceedings, and believed that the deed from Bickford and Willard to De Witt conveyed Stone's title to the estate.

The plaintiff offered parol evidence to show that when the defendant made the deed to her, he, in consideration that she would accept the same and pay the money therefor, agreed and promised that if she should not receive and acquire a title by virtue thereof, he would repay to her the said money; and that upon the faith of said agreement and promise she paid the money and accepted the deed. The judge excluded the evidence.

Upon the foregoing facts, the judge directed the jury to return a verdict for the plaintiff, for the sum of $3000, with interest from the time when a demand was shown to have been made, which was accordingly done; and reported the case for the determination of the whole court.

*P. C. Bacon & F. H. Dewey,* for the defendant, in addition to some of the cases cited in the opinion, cited *Wallis* v. *Wallis,* 4 Mass. 135; *D' Utricht* v. *Melchor,* 1 Dall. 428; *Dorsey* v. *Jackman,* 1 S. & R. 42; *Brisbane* v. *Dacres,* 5 Taunt. 153; *Bilbie* v. *Lumley,* 2 East, 469; *Elliott* v. *Swartwout,* 10 Pet. 137; *Mowatt* v. *Wright,* 1 Wend. 355.

*D. Foster & T. L. Nelson,* for the plaintiff. In this case there was a total failure of consideration. The contract was entered into under a mistake as to the subject matter, in which both parties participated. Under these circumstances, the whole transaction should be treated as a nullity. *Claflin* v. *Godfrey,* 21 Pick. 1, and cases cited. *Rice* v. *Goddard,* 14 Pick. 293, and cases cited. *Fowler* v. *Shearer,* 7 Mass. 31. *Martin* v. *McCormick,* 4 Selden, 331. *Gardner* v. *Mayor, &c. of Troy,* 26 Barb. 423. *Allen* v. *Hammond,* 11 Pet. 63. *Holbrook* v. *Holbrook,* 30 Verm. 432. *Thayer* v. *Viles,* 23 Verm. 494. *Barber* v. *Brown,*

1 C. B. (N. S.) 121. *Hitchcock* v. *Giddings*, 4 Price, 135. *Allen* v. *Mayor, &c. of New York*, 4 E. D. Smith, (N. Y.) 404. *Lapham* v. *Whipple*, 8 Met. 59.

The question does not depend upon the form of the deed. The whole basis of the contract has failed. If a warranty deed had been given, the mistake would have been apparent. If a release is taken, it may have been under a mistake or not. But mistake, if it exists, is just as much a ground for relief as fraud ; and the same rule prevails at law as in equity. 1 Story on Eq. §§ 141, 142, 143. It is not as if there had been a defect in the title of Stone. The parties all supposed that the grantor had the right to convey the title of Stone, such as it was. But no such title was conveyed. It is like the case of one assuming to act, under an appointment by a judge of probate, as adminis- trator of a living man. Would anybody doubt that in such a case the purchase money paid might be recovered back ? The defect had its origin in a remote proceeding in the court of insol- vency. The error as to the regularity of these proceedings was shared by the whole community. This question is as inde- pendent of questions of covenants as fraud itself is. There is always an implied warranty that the subject matter of a con- tract, the precise thing respecting which the parties undertake to deal, has an existence. 2 Kent Com. (6th ed.) 468. Nothing whatever passed by this deed, not even a seisin. The covenant in it was intended for another purpose. There has been as com- plete a failure of consideration as can be found in the books. It was not a case where the parties intelligently contracted for the sale of a possible interest. Evidence of an express oral promise by the defendant to refund the purchase money was competent. *Lapham* v. *Whipple*, 8 Met. 59. *Holbrook* v. *Hol brook*, 30 Verm, 432. Such promise was part of what she was to receive for her money.

The independent agreement was merely collateral to the deed, and falls with it. The agreement was not beneficial, unless the estate was purchased. The fair construction of it is, that the defendant would not enforce his mortgage upon the property she had purchased. What consideration for $4600 was there

in an agreement not to enforce a mortgage against property of a stranger? It is plain that the money was not paid for that agreement.

CHAPMAN, J. This action is brought to recover back money paid by the plaintiff to the defendant, on the ground that there has been a failure of consideration. The plaintiff took from the defendant a quitclaim deed of "all the right, title and interest in one undivided half of the real and personal estate in Oxford, formerly belonging to Henry D. Stone, of Worcester, this day conveyed to me by William M. Bickford and Fitzroy Willard, as assignees of said Stone, which I have under and by virtue of said deed from said Bickford and Willard." Then follows a covenant of warranty against all persons claiming by or under De Witt, and an exception of his title under certain mortgages from the operation of the deed and the warranty. It thus appears that he simply quitclaimed to the plaintiff the title that he derived from Bickford and Willard, by virtue of their deed to him, such as it was, and warranted against titles under himself only.

It afterwards proved that Bickford and Willard had no authority as assignees of the estate of Stone to convey his title to the land, (see *Grafton Bank* v. *Bickford,* 13 Gray, 564,) and for this reason the title failed. The property consisted of woollen and cotton factories with the machinery in the same.

If the plaintiff had paid her money for a mere quitclaim deed, there being no evidence or even allegation of fraud, but merely a mistake of the parties as to the title of Bickford and Willard, it is well settled that the plaintiff could not, upon the failure of title, recover back the consideration paid. The English doctrine on this subject is stated in 2 Kent Com. (6th ed.) 468. The learned author says: "I apprehend that in sales of land the technical rule remits the party back to his covenants in his deed; and if there be no ingredient of fraud in the case, and the party has not had the precaution to secure himself by covenants, he has no remedy for his money, even on failure of title. This is the strict English rule, both at law and in equity." He states the same doctrine in *Abbott* v. *Allen,* 2 Johns. Ch. 523,

and in *Frost* v. *Raymond*, 2 Caines, 188. In the latter case he states the rule to be that, if there be no covenant of title in the deed, the purchaser takes at his own risk the goodness of the title; and he remarks that, after this rule has been so long understood and practised upon, it would be of the most mischievous consequence to establish a contrary doctrine. For the parties to deeds know that a warranty is required to hold the seller to warrant the title, and they regulate their contracts accordingly. If there be any fraud in the sale, the purchaser has his remedy.

In *Holden* v. *Curtis*, 2 N. H. 61, the distinction is stated between sales of real and personal property. As to personal property, it is held that the purchase money may be recovered back if the title fails; but Woodbury, J. says that in sales of real estate, as the title appears on record and may be secured by covenant, the rule is otherwise; and the cases which have been thought contradictory, among which he mentions *Shearer* v. *Fowler*, 7 Mass. 31, are not really so. The same doctrine has been held in Vermont, in *Higley* v. *Smith*, 1 D. Chip. 409; in Pennsylvania, in *Kerr* v. *Kitchen*, 7 Barr, 486, and the earlier cases there referred to; in Maine, in the cases of *Joyce* v. *Ryan*, 4 Greenl. 101, *Emerson* v. *County of Washington*, 9 Greenl. 88, and *Soper* v. *Stevens*, 14 Maine, 133. In the latter case, the court refer with approbation to *Gates* v. *Winslow*, 1 Mass. 65, where the same doctrine was held. And this is the doctrine which ought to prevail. It has not only been so long practised upon as to be understood, but it is plain and simple, and in conformity with the language of the deed, which does not profess to do more than convey such right, title and interest as the grantor has. And the convenience of business requires that such a class of conveyances shall exist, by which a person may quitclaim his title without being subject to litigation if it fails. With such a doctrine, a grantee can always protect himself against mistakes, by declining to purchase unless the grantor will insert such covenants as may be necessary. It is much better to let the deed, which is the written contract between the parties, settle the question which party took the risk of mistakes as to the validity of the title, than to open the matter to the

uncertainty and litigation which the admission of parol evidence would occasion. There are probably very few cases in which any considerable sum is paid for a quitclaim deed, where it could not be proved by parol, either directly or indirectly, that both parties believed the title to be valid. There is occasionally a case like that of *Kerr* v. *Lucas,* 1 Allen, 279, where a mutual mistake cannot be made to appear. In such cases, though the title fails, the contract is not *nudum pactum,* and the grantor may recover the consideration, because by the contract the grantee took the risk. It is in harmony with this doctrine to hold that where both are mistaken the grantee cannot recover back the purchase money, because by the terms of the contract he took the risk.

But the present case is stronger than that presented by a mere quitclaim. The defendant's deed contains a covenant of warranty against all persons claiming by or under him. This express covenant operates as an exclusion of all other covenants or agreements ; and in this respect it is like the case of *Joyce* v. *Ryan, ubi supra.* In that case, the defendant, being licensed to sell the lands of the testator at auction for the payment of debts, gave a deed to the plaintiff with a covenant touching the regularity of his own proceedings. The action was brought to recover back the purchase money, on the ground that the testator had no title. No fraud was alleged. The court say : " It is a sufficient answer and defence to this action that the plaintiff took his deed with the covenants agreed upon at the time by the parties. . . . . . And to his action on those covenants he must look for his remedy. If those covenants are not broad enough to meet the exigencies of his case, we cannot enlarge them. Nor can we add to them, or supply their deficiencies indirectly in the form pursued in this case by the plaintiff; for to do so would still be to make a contract for the parties, and not to enforce one which they at the time thought proper to make for themselves." The doctrine that if a grantee takes an express covenant he is limited to such remedies as it furnishes is founded on an elementary principle, *expressio unius, exclusio alterius ;* it is sustained by many authorities, and is clearly just and proper.

Earle *v.* De Witt.

For if it is a limited covenant, it is manifest that the parties agreed upon the extent to which the covenantor should be liable, and the risks which the grantee should take. In the present case it is manifest that it was in the power of the plaintiff to decline making the purchase without a covenant against Stone and all persons claiming by or under him. But the deed, which is the exclusive evidence of what the contract was, shows that she required no such stipulation, but took upon herself the risk of everything except claims under the defendant.

There is a class of cases which may seem on a superficial view to conflict with this doctrine. *Hitchcock* v. *Giddings*, 4 Price, 135, is one of this class. It was a bill in equity seeking relief from a bond given for the purchase of an interest in remainder. The tenant in tail had, without the knowledge of either party, suffered a recovery, and thus destroyed the estate in remainder. The bill was maintained on the ground that the subject of the sale had no existence at the time of the sale. And it was compared to a sale of land which the parties supposed to exist, but which had been swept away by a flood. The relief was granted on the ground that there was a mutual mistake, not as to the validity of the title, but as to the existence of the subject of the sale. There are also cases in which the purchase money has been recovered back where it was given for the purchase of land that had no existence, though the deed was one of quitclaim. *Gardner* v. *Mayor, &c. of Troy*, 26 Barb. 423, is a case where the money was recovered back, because the estate for a term of years which was sold did not exist; but in that case Harris, J. admits that, upon a sale of land in existence, the purchaser must, upon failure of title, look to his covenants; and if he has not had the precaution to protect himself in that way, he cannot recover. The case of *Martin* v. *McCormick*, 4 Selden, 331, is put upon the same ground, that the subject matter of the sale, which was a term of years, had no existence.

There is also a class of cases like that of the present plaintiff against Bickford, *post*, 549, to which the doctrine does not apply. Nor does it apply to sales of personal property. *Holden* v *Curtis, ubi supra.*

But the foregoing considerations do not exhaust the whole case. The plaintiff was not content to pay her money for the mere consideration stated in the deed. She required of the defendant another instrument, which was an agreement by him in writing, and is called by the parties a bond. The property conveyed was subject to several mortgages. One of them was held by Henry H. Chamberlin, who was connected with the plaintiff in the purchase. He had entered for foreclosure under this, and was then in possession. Two others were held by the defendant; one was held by the Worcester County Institution for Savings, and one by Delano Pierce. By the written agreement, the defendant agreed with the plaintiff and Chamberlin that no claim should be made upon them for payment of either principal or interest upon his mortgage notes till June 24, 1859; and then, upon payment of a specified part, a further time was to be given for the balance. He also agreed that he would not enforce the power of sale contained in his mortgage, and that if it should become necessary, to prevent other parties from enforcing their mortgages, he would pay them and take an assignment to himself, and give a specified time of payment upon them to the plaintiff and Chamberlin. This was a good and valuable consideration. Forbearance is itself sufficient; but here was the additional consideration of labor, expense, and an obligation to advance sums of money that might be large.

In respect to this, there has been no failure of consideration, and it is now impossible to estimate its value, or to place the defendant *in statu quo*. But in order to rescind a contract of sale, and maintain an action for the purchase money, the vendor must be placed in the same situation he was in before the sale. *Conner* v. *Henderson*, 15 Mass. 319. It is so even where there has been fraud. *Kimball* v. *Cunningham*, 4 Mass. 502. In this case it would be extremely difficult for a court or a jury to apportion the consideration; for it was apparently in the power of the defendant, by enforcing his power of sale, to have perfected a title to the equity of redemption, long before the invalidity of the proceedings in insolvency was established; and if

this were otherwise, the difficulty of making a just apportionment would hardly be diminished.

There is another circumstance which has some importance in this connection. A few days after the plaintiff's purchase she sold the property to Tower & McGaw, for a large advance, giving to them a quitclaim deed, and taking back their notes for the purchase money, secured by a mortgage of the property. She brought the notes and mortgage into court, and offered to surrender them to the defendant. But this was not an offer to return to him what had once belonged to him; nor could he be under any obligation to receive them. And as to the bond, so called, she had at least assigned her equitable interest in it to her grantees; and the power to discharge that interest was in them, and not in her, so that it is apparently still outstanding against the defendant. Chamberlin, to whom it was given jointly with the plaintiff, does not appear to have released his interest in it. A part of the plaintiff's claim is for the money which she paid for the original fourth part of the premises which was purchased of Bickford and Willard under the agreement between the plaintiff and Chamberlin and the defendant, before the sale at auction. Under that arrangement the defendant bid off the property; one half for himself and one fourth for each of them. It was bid off for $3200. The defendant paid the whole, and the plaintiff repaid him one fourth, being $800, which he had advanced for her. It is plain therefore that he acted merely as her agent, and that she ratified his act. She must then seek her remedy against the parties with whom he acted in her behalf. *Tuckwell* v. *Lambert*, 5 Cush. 23. *Ilsley* v. *Merriam*, 7 Cush. 242. Her claim against them will be considered in her action against them.

But the plaintiff has alleged in her declaration, and offered to prove at the trial, that at the time of the defendant's conveyance to her, the defendant agreed by parol that if she should not acquire a title to the property by virtue of the defendant's deed, he would repay the money. The evidence was rejected, and it is now contended that the rejection was erroneous. The case of *Latham* v. *Whipple*, 8 Met. 59, is cited in support of this

position.   In that case the defendant had conveyed to the plaintiff one half part of the benefits and advantages of a certain patent right, owned by him, for which he received $1000 ; and it was held that the plaintiff might prove a parol agreement, made at the time, that if the plaintiff did not realize that sum within three years, he would repay the money, with interest. But it did not appear in that case that the defendant had made any express covenants, and the contract did not relate to real estate ; nor is the question much discussed.   The case of *Holbrook* v. *Holbrook*, 30 Verm. 432, is also cited to this point.   In that case, the defendant had given a quitclaim deed of real estate, and the plaintiff was allowed to prove that he made a parol agreement to repay the purchase money in case the title to a part of the land should fail, and he recovered on that ground. There are several earlier cases in Vermont to the same effect.

In the present case, there was a covenant of warranty in the deed, and also a separate agreement in writing, signed by the defendant, and containing important stipulations as to the title ; and an agreement to pay back the purchase money in case the plaintiff should not acquire a title to the property by virtue of the defendant's deed, would amount to an additional warranty against incumbrances ; and, indeed, to a full warranty of the title of Stone.   If the evidence had been admitted, and the plaintiff had recovered on that ground, the recovery would have been upon the breach of a parol warranty made as an addition to the written warranty and agreement of the defendant, and as part of the same transaction.   Such a principle would always make it necessary for a grantor to state negatively what he did not warrant, and would nullify the rule of evidence in respect to conveyances, that written agreements shall not be enlarged by parol evidence.   Indeed, if there had been a mere quitclaim, it would be a case where a party paying money for a deed would offer evidence that the deed did not contain the whole contract of the grantor, but that he had made verbal stipulations which the deed did not contain.   It would thus be an attempt to enlarge the written stipulations of the deed by parol.   And the evidence does not relate to the consideration paid by the grantee, but to

the obligation of the grantor in case of the failure of title; which is the precise ground that warranties are designed to cover. The remark of Thomas, J. in *Howe* v. *Walker*, 4 Gray, 318, is applicable to it: " Nor can you, under the guise of proving by parol the consideration of a written contract, add to or take from the other provisions of the written instrument." In that case the defendant had made to the plaintiff a quitclaim deed, with the usual covenant against all persons claiming by or under him. The plaintiff contended that he had also agreed verbally to pay off an incumbrance existing upon the land, but not created by him. The evidence of such agreement was excluded. The cases in which this ancient rule of the common law has been sustained by this court are very numerous, and of great variety; and it is doubly important to sustain the rule in all its length and breadth since parties have been made competent witnesses.

MERRICK, J., dissenting. I am unable, after mature deliberation, to concur with the majority of the court in the opinion that the defendant is entitled to judgment; and a strong conviction that it is erroneous induces me to state the reasons why I dissent from it.

The action is brought to recover back the money paid by the plaintiff to the defendant in the execution on her part of a contract alleged by her to have been induced by the common mistake of the parties respecting a material fact, and made upon a consideration which has wholly failed. The contract, the payment of the money, the mistake and its materiality and controlling influence, and the failure of consideration, are all clearly established. This will be readily seen upon a recurrence to the facts stated in the report which were found upon the trial.

1. The estate concerning which the contract was made, and which consisted of certain factory property, real and personal, in North Oxford, was formerly owned, subject to one or more outstanding mortgages, by H. D. Stone. William M. Bickford and Fitzroy Willard, asserting and claiming that Stone had become insolvent, and that in due course of legal proceedings they had been chosen and appointed his assignees, and that all

his estate, real and personal, had been duly transferred and assigned to them by the judge of the court of insolvency, and assuming to exercise the rights and powers of such assignees, advertised that they would sell the said estate at public auction on the 24th day of July 1858. The defendant attended at the time and place of such advertised sale, and purchased the estate, being the highest bidder therefor, for the sum of $3200. This purchase was made in pursuance of a previous arrangement between him, the plaintiff and H. H. Chamberlin, by which he was to buy the estate of the supposed assignees, and was to hold one undivided half of it as his own property, and to convey one undivided fourth part thereof to the plaintiff and a like undivided fourth part to Chamberlin. Accordingly the defendant paid $1600, and the plaintiff and Chamberlin each paid $800, to said Bickford and Willard; and on the 26th day of the same month they by their quitclaim deed of said estate conveyed to the defendant " all the right, title and interest which the said Stone had therein on the 10th day of February 1858, that being the date of the first publication of proceedings in insolvency against him." Nothing further was done by the parties in pursuance of said arrangement between the defendant, the plaintiff and Chamberlin ; but on the next day, the 27th of July, they made a " new bargain," by the terms of which De Witt agreed to convey the whole estate in equal shares to the plaintiff and Chamberlin, in consideration of which they agreed to assume the consideration paid for the conveyance from Bickford and Willard, and to pay him the further sum of $6000, in equal proportions. As he then held one undivided half of the whole estate, for which they had paid the purchase money, in trust for them, and was bound to convey one undivided fourth part thereof severally to the plaintiff and to Chamberlin on demand, it is obvious that his agreement to convey " the whole estate " to them was a contract to sell and convey to them, in equal shares, for the consideration named, the other half of the same estate, that is, all the right and interest which Stone had therein on the day of the date of the first publication of the proceedings in insolvency. *Livermore* v. *Aldrich*, 5 Cush. 431.

This is shown not only by the facts above stated, but also by the description in the deeds made by him; that in the deed to the plaintiff being " all the right and interest in one undivided half of the real and personal estate in Oxford formerly belonging to Henry D. Stone of Worcester, this day conveyed to me by William M. Bickford and Fitzroy Willard, assignees of said Stone, which I have under and by virtue of said deed from Bickford and Willard." It is evident, therefore, that the " new bargain " made by the parties was a contract that the defendant should sell and convey, and that the plaintiff and Chamberlin should purchase and pay for, the right and interest which Stone had formerly owned and held in the premises.

2. In the intended and supposed execution of this contract, the defendant made and delivered to the plaintiff his quitclaim deed, containing a description of the estate in the terms above mentioned, and she at the same time paid to him the sum of $3800

3. When this contract was made, and when said deed was delivered and said money was paid, all the parties supposed and believed that Bickford and Willard had been legally constituted the assignees of Stone, and consequently that his interest in the estate had been duly assigned and transferred to them, and that they had ample power and lawful authority to sell and convey it to others. This belief was a mistake of fact. Such a mistake occurs whenever some fact which really exists is unknown, or some fact is supposed to exist which really does not exist. *Mowatt* v. *Wright*, 1 Wend. 355. The mistake in this instance was of the latter description. It was one into which, from the circumstances well known to have occurred, the parties would be very liable and very likely to fall. For there had been certain proceedings, purporting to be the acts, decrees and judgments of the court of insolvency, under and by force of which Bickford and Willard had been appointed and constituted the assignees of Stone. But all these proceedings were afterwards ascertained to have been illegal and nugatory; and on the 4th of February 1860, by a decree of this court in the case of *Grafton Bank* v. *Bickford*, 13 Gray, 564, they were wholly set aside and annulled; and then the mistake under which they had

acted became apparent. *Denny* v. *Mattoon,* 2 Allen, 361. There had been no error or misapprehension in the mind of any one of the parties in relation to the law. They all understood perfectly well what that was. They knew that if the proceedings above referred to had been regularly conducted and pursued under the statute, and in conformity to its provisions and requirements, the whole title which Stone once had in the estate would have become vested by operation of law in Bickford and Willard, as his assignees; that they would thereby have acquired the right and power to dispose of it, and that their deed would be a legal and effectual conveyance of it to their grantee. As to all this their knowledge was accurate and their opinions correct. Their only error consisted in the erroneous assumption and belief that Bickford and Willard were in fact the real and legal assignees of Stone. But this was a mistake in a matter of vital importance. The whole bargain, and whether there should be any bargain at all, manifestly depended upon it. For if they knew that Bickford and Willard were not the legal assignees of Stone, and consequently that the title to the estate remained in him, notwithstanding their deed to De Witt, it is impossible to suppose that he would have contracted to sell the estate, or that the plaintiff and Chamberlin would have agreed to buy it of him and pay for it the large and valuable consideration which they did. But in truth this was not known to any one of them; and they all acted in ignorance of the real fact, and in the mistaken belief that Bickford and Willard were the legally constituted assignees of Stone, and consequently that their deed had conveyed his right and title in and to the estate to De Witt. That was his understanding and his claim. He set up no pretension of his own to any right or interest in the estate, other than the title of Stone which he believed that Bickford and Willard as his assignees had a right to convey, and which all parties assumed as a fact that he had acquired under their deed. He had no intention or thought of selling or of offering for sale anything else, and the plaintiff and Chamberlin had in view the same object and purpose which he had, and understood and believed exactly what he understood and believed concerning the

supposed official character and authority of Bickford and Willard. But they were all misled by, and acted under, the common and mutual error and mistake into which they had fallen, and neither of them would have acted as. he did if such error and mistake had not existed. It is. therefore certain that their new bargain was made when they were all mistaken in reference to a material fact, and that this was the controlling influence which prevailed upon them to contract with each other. Of the existence of this mistake, and of its materiality and prevailing effect, there is no doubt. That there has been an entire failure of the consideration for which the money was paid is equally certain.

On the 11th of August 1858, about two weeks after the date of the deed from De Witt to her, the plaintiff executed a deed, similar in its terms to that received from him, to Tower & McGaw, and took from them their promissory notes for the entire purchase money, secured by mortgage on the estate. No part of the principal of those notes, which still remain in her hands, or of the interest which has accrued thereon, has ever been paid. And as her deed conveyed no title to her grantees, they have a perfect defence to the notes. No action can be maintained on them, nor can any part of their contents ever be recovered. *Rice* v. *Goddard,* 14 Pick. 293. *Whittemore* v. *Waters,* cited in *Gates* v. *Winslow,* 1 Mass. 65. *Kerr* v. *Kitchen,* 7 Barr, 486. *Boas* v. *Updegrove,* 5 Barr, 516. *Soper* v. *Stevens,* 14 Maine, 133. The distinction between a legal defence to such notes, and the right to recover back, upon mere failure of title, money voluntarily paid for a quitclaim deed, is particularly stated, explained and vindicated in several of the cases above cited.

Immediately after the judgment and decree in the case of *Grafton Bank* v. *Bickford,* above referred to, Stone then being insolvent, new assignees in insolvency were duly appointed, and all his estate was assigned to them. On the 1st of January 1861 these new assignees conveyed the premises which are the subject of the present controversy to Bela J. Stone. The plaintiff has never personally been in possession of the premises, but Chamberlin and Borroughs, either alone or jointly with other

parties holding under the deed of De Witt, have been in possession of the entire estate ever since the 28th day of July 1858, claiming title under that deed. Bela J. Stone and the new assignees have commenced suits against Chamberlin and Borroughs to recover possession of the property and the mesne rents and profits. In these suits they must necessarily prevail, since they have a good, and Chamberlin and Borroughs have no, legal title to the estate. And as the whole of the rents and profits must be accounted for, and the amount thereof paid to the true owners, it appears that nothing has been or can be realized and retained by the plaintiff, or by her grantees or assignees, for the use, occupation and improvement of the estate.

It has already been determined in another action — *Earle* v. *Bickford, post,* 549 — that Bickford and Willard are not entitled to retain the money paid to them on the execution of their deed to De Witt, but that it may be recovered back from them by De Witt, the plaintiff and Chamberlin, in the proportions which they severally contributed. If, therefore, the sum paid by the defendant has not already been or shall not hereafter be voluntarily returned and restored to him, he may maintain an action against them for its recovery.

From this reference to the facts proved upon the trial, and the conclusions directly and necessarily to be deduced from them, it appears that the plaintiff paid to the defendant the sum of $3800, in the intended execution of a contract made by the parties under and in consequence of a common and mutual mistake respecting a most material fact; that this mistake was the efficient cause of the making of the contract; that she has received no benefit whatever in return for her money, having acquired neither the estate, nor the right, title and interest of Stone therein, which it was her object and purpose to buy, and the object and purpose of the defendant to sell and convey to her; and therefore that there has been not only a failure of title to the estate which was the subject of contract, but also an absolute and total failure of the particular and special consideration for which the money was paid. Yet the defendant now claims that he is entitled to retain and hold it as his own, although it

has become manifest and certain that he obtained it solely in consequence of a mistake concerning a material fact, into which, without fault or negligence on either side, the parties had fallen, and by which they were equally misguided and deceived; and although by the quitclaim deed which he made to her he neither lost nor parted with anything of his own, nor conferred any benefit or advantage upon her ; in short, although he got her money, by means of a mutual and controlling error and mistake, literally for nothing. Such a claim has surely no foundation in justice or equity, and to my own mind it seems clear that it cannot in law be maintained.

But the defendant insists that as it is a well settled and established principle of law that a mere failure of title furnishes no ground for recovering back money paid upon a quitclaim deed, he has a perfect legal defence to the present action. And this would certainly result as a necessary legal consequence from that principle, if it covered the whole ground upon which the plaintiff predicates her demand and her alleged right to recover back the money which she paid to him. For although it is a general and familiar rule that money paid upon a consideration which has failed may be recovered back, that rule is not applicable to the case of a payment voluntarily made upon the execution and delivery of a quitclaim deed, where there has been neither fraud nor mistake. 1 Parsons on Con. 386. *Claflin* v. *Godfrey*, 21 Pick. 9. *Boas* v. *Updegrove*, 5 Barr, 516. And this inapplicability results chiefly from the reason that as the grantor may, if such be the understanding and intention of the parties, protect himself by insisting upon the introduction of proper covenants into the deed, the omission of all such covenants affords a conclusive presumption that the grantor intended to transfer and assign only his own right and interest, whatever they might be, if he had any, and that the grantee accepted the deed with no understanding and expectation that he should thereby acquire anything beyond that right. But it often happens that this bare possibility of right is all that the purchaser seeks to acquire, and all which is the subject of negotiation and contract; and of course, in such case,

failure of title constitutes no failure of consideration. This is
well explained in the case of *Kerr* v. *Lucas*, 1 Allen, 279, where
it is said that the execution of a release of all one's right, title
and interest, in any property, real or personal, fairly made for
the purpose of quieting a doubtful title, is a good consideration
for the price paid, even if the release is afterwards found to be
of no value, or of no use to the party obtaining it. The same
general doctrine has frequently been held to apply in cases
where the object of the purchaser is not to extinguish any pos-
sible adverse claim, but to obtain whatever right, title or inter-
est the grantor may be supposed or .conjectured to have in the
premises. Thus in the case of *Gates* v. *Winslow*, 1 Mass. 65,
the defendant " having some pretensions to certain lands in
Canada," sold and conveyed his right therein for an agreed
price to the plaintiff, and made to him a quitclaim deed thereof.
And it was determined that the money paid could not be recov-
ered back when it was subsequently ascertained that the grantor
never had any title to the land. And this for the reason that
the pretended right of the defendant, though it proved to be
unreal and valueless, was the well understood and actual con-
sideration for which the money was paid. And in illustration
of this it was said by Strong, J., that the purchaser of a lottery
ticket, which drew only a blank, might as well insist upon the
return of the money paid for the ticket; for it was the possi-
bility of obtaining the prize which it might draw and not the
prize itself for which the purchaser paid the price for the article
sold to him. So where one paid a sum of money to the owner
of a vessel destined to sail on one or more voyages as a duly
commissioned privateer, upon an agreement that he should
receive therefor a definite share or proportion of the prizes
which might be captured, and the voyages were prevented by a
termination of the war, it was held that the money so paid
could not be recovered back upon the ground of failure of con-
sideration, because the real consideration was the probability
and chance of gain, of which chance he had the full benefit,
although it ultimately proved to be unavailing and fruitless.
*Woodward* v. *Cowing*, 13 Mass. 216. And where a sheriff sold

on execution the right of the debtor to the premises advertised, and gave to the purchaser a quitclaim deed thereof, it was determined that the money paid for it could not be recovered back, because he sold only the debtor's right, whatever it might prove to be, of which the purchaser assumed the risk, and consented to bear the consequences of his own estimate of it. *Boas* v. *Updegrove, ubi supra.* And where an executor sold land supposed to belong to his intestate, and gave a quitclaim deed to the purchaser, who was afterwards evicted by a person having a superior title, it was held that he could not recover back the purchase money, because he did in fact acquire the very right and title which he purchased, and which, though it was subsequently found to be ineffectual and worthless, constituted the real and a sufficient consideration for the money which he paid for it. *Joyce* v. *Ryan,* 4 Greenl. 101. The more general principle, that the rights of the parties are to be determined according to the express terms of the written contract, is affirmed in the case of *Emerson* v. *County of Washington,* 9 Greenl. 88, the court saying that it is well settled that if a grantee receives and accepts a deed without covenants of warranty, he cannot recover back the consideration, unless there was fraud. And again in *Soper* v. *Stevens,* 14 Maine, 133, which was an action to recover back money paid in consideration of a quitclaim deed, from the premises supposed to be conveyed by which the plaintiff was subsequently evicted by one having a better title, it was held that the action could not be maintained, because the money had been paid voluntarily, and also because it is a rule that where the parties have reduced their contract to writing, the written instrument is alone to be resorted to as the measure of their liabilities. The same principle was affirmed in the case of *Higley* v. *Smith,* 1 D. Chip. 409, although upon the facts there shown there was no occasion for its application, inasmuch as it was held that the deed actually conveyed a good title to the land. It is also recognized as the established law in the case of *Kerr* v. *Kitchen,* 7 Barr, 486. And in *Dorsey* v. *Jackman,* 1 S. & R. 42, it was decided that a purchaser of real estate cannot recover back the purchase money paid for a quitclaim deed in

case the title proves defective, unless there be fraud or warranty, or, as is stated by Brackenridge, J., unless the money has been paid by reason of a mistake and upon failure of consideration.

In no one of the cases above mentioned, which are all cited and relied upon by the defendant in support of his defence, was there any proof or allegation that any fraud or imposition had been practised upon the grantee, or that the parties acted or had been induced to make their bargain and to enter into and execute their contract under and by reason of a common and mutual mistake of fact. And they have been here briefly but particularly noticed for the sole purpose of showing that the principle upon which every one of them was decided is, in each instance, expressed in cautious and guarded terms by the court to be, simply, that money paid for a quitclaim deed cannot be recovered back merely because the grantee is subsequently evicted by another person having a superior and better title. And this principle is always to be strictly limited and confined to cases where, no external or collateral fact or circumstance which may affect the deed or invalidate the contract being shown to exist, the rights of the parties are to be settled and determined according to the terms, stipulations and covenants contained in the written instrument. But it is never to be applied as a governing rule to contracts into which one of the parties has been betrayed by fraud and imposition, or where the real purpose and design of both of them has been perverted or wholly defeated by mutual mistake of fact. Hence it is obvi-ous that the defendant cannot avail himself of this principle in defence of the present action, because the plaintiff does not claim to be entitled to recover back the money which she paid to him, upon showing merely that he had no title to the estate described in his quitclaim deed, but upon the broader ground that in consequence of a mutual mistake concerning a material fact, by which the parties were essentially misled, the formal contract into which they entered had no legal force, but was in all respects invalid and subject to be rescinded and abrogated by either of them at his pleasure, and that it has been in fact so rescinded and abrogated by the plaintiff.

In reference to the invalidity of contracts by reason of mistakes which have induced them, it is a general and well settled principle of law, that an act done or contract made under a mistake, or in ignorance of a material fact, one which is essential to its character and an operative and efficient cause of its execution, is voidable, and the parties may have relief against it both at law and in equity ; and this, although it has not been induced or promoted by any imposition or fraudulent practice. If a contract is made under a mutual error in regard to circumstances material to its character and its consequences, which necessarily disappoints and defeats the purpose and intention of the parties to it, it is utterly invalid ; it creates no permanent obligation and has no binding force upon either of them ; for each of them may at his pleasure absolve himself from it. This proceeds from, and is a necessary consequence of, the principle that mutual consent is requisite and essential to the creation of a contract ; and there is no legal contract when there is error or mistake of facts or of circumstances, going to the essence of it. *Non videntur, qui errant, consentire*, is a maxim of universal application as well as of universal justice. And when a formal contract, the result of mutual mistake and misunderstanding respecting a material fact, is rescinded, as it may be by either of the parties, their relation to each other is consequently just the same as if it had never been made, and they are in all respects remitted to their original rights. 1 Story on Eq. §§ 134, 141, 142, 151. 2 Kent Com. (6th ed.) 477, 491. *Spring* v. *Coffin*, 10 Mass. 31. And in such case an action may be maintained to recover money which one of them has received, and which *ex æquo et bono* he ought to refund. *Mowatt* v. *Wright*, 1 Wend. 355. *Union Bank* v. *Bank of United States*, 3 Mass. 74. *Lazell* v. *Miller*, 15 Mass. 207.

This principle has very often been affirmed. It is distinctly stated and explained by the court in *Mowatt* v. *Wright*, above cited, although it was held that upon the facts proved there was no proper occasion for its application, and the plaintiff therefore failed to maintain his action. But in the case of *Martin* v. *McCormick*, 4 Selden, 331, it was both affirmed and acted upon.

and was the very basis and turning point of the decision of the court. The plaintiff was the owner of a tract of land which had been sold for taxes. Under a mistaken supposition of the parties that the purchaser at the tax sale had received a conveyance which had become absolute, the plaintiff bought in the title, and paid for it the price agreed upon. It was afterwards discovered that in this particular matter of fact the parties were both mistaken, and acted under that mistake; and it was held that, upon the ground of this mistake and the consequent failure of the consideration, the money paid could be recovered back. So, where the city of Troy made an assessment on certain land for the expenses of opening a street, and the tax not having been paid, the land was sold for its payment. The purchaser afterwards released all his right to the city, and the city sold the land to the plaintiff, and received payment of the price for which it was sold. All the parties acted in the belief that the tax had been duly assessed, and that the sale first made was valid, and that the deed made in pursuance of it conveyed the title. But it was afterwards discovered that the tax was illegal, and that the sale of the land made to obtain payment of it was void. And it was thereupon determined that, the parties having been mutually mistaken as to the facts upon which the validity of the sale depended, the contract might be rescinded, and the purchase money paid be recovered back, because the parties had acted under a common mistake in relation to a material fact, and the consideration had wholly failed. *Gardner* v. *Mayor, &c. of Troy*, 26 Barb. 423. And again, where money was paid upon a quitclaim deed, and no such estate as that described in the deed could be found, it was held that although there had been no fraud the money might be recovered back, for the reason that the parties were mistaken in supposing, and in acting upon the belief of, the existence of the particular estate attempted to be conveyed. *D'Utricht* v. *Melchor*, 1 Dall. 428. In the case of *Shearer* v. *Fowler*, 7 Mass. 31, it appeared that the land of the husband had been attempted to be conveyed by the deed of the wife, the grantor and grantee both acting under the erroneous belief that she had lawful authority to make the

conveyance. But as she had no such authority and was legally incompetent to make the deed, the plaintiff recovered judgment for the amount he had paid upon receiving it. So, where one purchased the interest of the vendor in a remainder in fee expectant on an estate tail, and the tenant in tail had already suffered a recovery of which both parties were ignorant until after the conveyance had been made and an absolute bond had been given for the payment of the purchase money, the court ordered that the contract should be rescinded, and that all the interest which had been paid upon the bond should be refunded, on the ground that the parties were mistaken in supposing that the vendor had an interest in the subject matter at the time of the sale, and that the contract had therefore been made by them under a mutual mistake as to a material matter of fact. *Hitchcock* v. *Giddings*, 4 Price, 135. In the case of *Bingham* v. *Bingham*, 1 Ves. 126, the facts stated in the report show that an agreement had been made for the sale by the defendant to the plaintiff of an estate for the recovery of which an action of ejectment had been brought by the former against the latter. The deed was made and accepted, and the money paid. But it afterwards appeared from facts which then became known, that the estate in fact already belonged to and was owned by the plaintiff; and it was held that the money he had paid could be recovered back, for the reason that the parties had acted under a mutual mistake. And the master of the rolls said, that although there had been no fraud, and the defendant apprehended that he had a right, yet there was here a plain mistake, and such an one as the court was warranted in relieving against, and that it would not suffer the defendant to run away with money received in consideration of the sale of an estate to which he had no right.

That a contract so made is absolutely invalid and may be rescinded at the pleasure of either of the parties, or even also by any third person who may have an interest in the subject matter of it, the case of *Williams* v. *Reed*, 5 Pick. 480, may be referred to as a very significant authority. Pratt, the guardian of certain minors, advertised, and on the 3d day of July 1820 sold, their real estate to the defendant Reed, under a license

from this court for that purpose, for the sum of $1528. On and before September 28th 1822 Reed paid $955, and for the balance due upon the purchase gave his promissory notes to Pratt, who at the same time made to Reed a deed of the estate and placed it in the hands of one Pool, to be delivered to the grantee when the whole amount due on the notes should be paid. Reed afterwards paid $125 upon the notes; and on the 1st of April 1826 took them up and gave new ones for $787, that being the balance then due. Sometime after all these transactions it became known that Pratt had not taken the oath or filed in the probate office the bond required by the statute to qualify him to make a valid sale, and Williams, the plaintiff, being a creditor of Reed, brought an action against him and summoned Pratt as his trustee, intending thereby to attach as the property of Reed, and as a debt due to him for the recovery of which a suit might at once be instituted and maintained, all the money which he had paid to Pratt in part payment of the price he had agreed to pay for the estate. Reed had entered into possession of the land soon after the purchase, and continued thenceforward for more than six years, and up to the time of the service of the trustee process, to have the exclusive use and enjoyment of it; and neither he nor Pratt had ever rescinded, or attempted or expressed any intention or wish to rescind the contract, which they had evidently made fairly, but in the mistaken belief that Pratt had duly complied with all the requirements of law which were necessary to qualify and empower him to make a valid and effectual conveyance of the estate. Pratt prayed to be discharged, and objected that the money paid to him by Reed could not be held as his property by force of the attachment. But the court said that as there was no bond and no oath the sale was void, or at least voidable, so that the parties to it were at liberty to vacate it and consider it as annulled; that the estate, notwithstanding the deed of the guardian, still belonged to the minors, and that Reed had a right of action to recover back the money he had paid as a payment upon a consideration which had failed. And Pratt was thereupon charged as trustee, and thus compelled to rescind the

contract. This, therefore, was in reality, though not expressed in those words, a direct decision that a contract entered into by parties under a mutual mistake of a material fact can have no binding force or effect in law, but must, when contested, be treated as a nullity; and that the relations of the parties to each other when it is rescinded are the same as they would have been if it had never been made.

These cases by no means comprehend all the contingencies or combinations of circumstances under which money paid upon a contract induced and entered into under a mutual and common mistake of fact may be recovered back from the vendor. They are only particular but varied instances, exemplifying the general principle which is absolute in its terms and subject to no qualification, reaching to every possible case in which parties have acted in substance and effect contrary to their own will and purpose, under the controlling influence of error and mistake. Whenever the existence and effect of such common error and mistake disappoint and frustrate their intention and the object they mean to accomplish, the prevalence of such mistake always invalidates the contract into which they have entered, and they are then to be restored, as nearly as may be, to their original rights.

The application of this just and equitable principle of law to the facts proved upon the trial of the present action would seem to leave no room for doubt as to what ought to be the result of it. The new bargain of the parties, as has already been shown, was founded upon and was induced by a mistake of fact, most material in its character and consequences, in which, without fault or blamable negligence, they equally participated, and the consideration upon which the plaintiff paid her money to the defendant has wholly failed. This gave to each of them the right, upon discovery of the error, to rescind the contract, and the demand of the plaintiff upon the defendant for the restoration of the money was a declaration of her purpose to rescind it. She thereupon became entitled to be remitted and restored to her original rights, which includes of course the restoration of the money which she had paid; and the defendant,

having failed in consequence of their mutual mistake to transfer or assign to her any equivalent for it, and having parted with no right or interest to which he had any title or legal claim, but having by means of the mistake received the money without consideration, was bound both in law and equity to repay it at once.

And in this principle of law and the facts of the case is found a plain and decisive answer to the further position assumed by the defendant, that the stipulations in the written instrument, which is called his bond, furnish a good and sufficient consideration for the money which he received of the plaintiff. This might be correct if its stipulations had been obligatory upon him; but though supposed to be so while the parties remained in ignorance of the mistake by which they had been misled, they really were not. It was part of the new bargain for the sale and conveyance of the estate that this bond should be given, and it was made and executed as a part of that contract at the same time when the deed was delivered and the money paid. It was all one transaction. And the whole contract being invalid by reason of the mistake of fact, none of the stipulations embraced in it could have any binding force or impose a legal obligation upon either of the parties. The defendant had the right and privilege equally with the plaintiff to insist upon the rescission of the contract as soon as the error was discovered. And whenever the rescission should occur, he would at once be remitted to the rights which existed before the contract was made. He might thereupon have enforced his mortgage, by proceedings with a view to foreclosure, or by sale and conveyance under the power given him for that purpose, without incurring any liability thereby, just as the plaintiff could insist upon the refunding of the money she had paid. He was under no obligation to refrain from pursuing whatever measures he deemed essential to his own protection and the enforcement of his rights. His forbearance and delay in doing so were not required by any legal restrictions to which he was subjected, but resulted from his ignorance of the existence of that mistake which invalidated the contract of the parties, and his consequent want of knowledge of what his rights really were. By this delay it does not

however appear that he suffered any loss. His debt continued to be well secured by mortgage upon the real estate, which was ample in value for that purpose; he was put to no inconvenience by paying or purchasing any outstanding incumbrance; and he enjoyed whatever benefit could be derived from the use of the plaintiff's money, for which he is not called upon or bound to account, from the time when he received it, until its return was demanded. But it is immaterial whether there was loss or gain, the real question here being, what are the legal consequences resulting from the transactions of the parties. In this view it is sufficient that, as the bond was not obligatory upon the defendant on account of the mistake which invalidated the whole contract, the stipulations contained in it afforded no consideration for the money paid to him.

In conclusion I have only to add that, in view of the whole case and for the reasons stated, it appears to me that no legal or equitable defence to the action has been shown, and that the plaintiff ought therefore to have judgment for the full amount of her claim, with interest from the day when the restoration of the money was demanded. *Verdict set aside*